**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

**U.S. Department of Justice – Civil Division**
**Commercial Litigation Branch**
Ruth A. Harvey
Kevin P. VanLandingham
Seth B. Shapiro (D.C. Bar No. 433988)
P.O. Box 875, Ben Franklin Station
Washington, DC 20044-0875
(202) 514-7164
seth.shapiro@usdoj.gov

*Attorneys for the United States of*
*America*

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*<br><br>          Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br>Jointly Administered |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS<br><br>               Plaintiff,<br>      v.<br><br>BLOCKFI, INC. *et al.*, and<br>UNITED STATES OF AMERICA,<br><br>             Defendants. | Adv. Pro. No. 23-01144 |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**<u>DEFENDANT UNITED STATES' MOTION TO WITHDRAW THE REFERENCE</u>**

The United States of America (the "United States") hereby moves (this "Motion") to withdraw the reference of the above-captioned adversary proceeding ("Adversary Proceeding"), filed by the Official Committee of Unsecured Creditors (the "Creditors Committee" or "Plaintiff"). This Motion is brought pursuant to <u>28 U.S.C. § 157(d)</u>, Rule 5011 of the Federal Rules of Bankruptcy Procedure, and Rule 5011-1 of the Local Bankruptcy Rules.[2]

## <u>INTRODUCTION</u>

The United States seeks immediate withdrawal of the reference to prevent improper interference with an ongoing criminal case and forfeiture proceeding now pending in the District Court for the Western District of Washington. The Bankruptcy Court has already issued two *ex parte* temporary restraining orders (the "TROs") interfering with the criminal proceedings, the second of which orders the United States to affirmatively stay the enforcement of four pre-petition criminal seizure warrants to recover approximately $35 million in cryptocurrency accounts. BlockFi[3] is not a party to the criminal proceeding, nor are its creditors. BlockFi is a virtual asset service provider used by the two criminal defendants to hide laundered cryptocurrency funds. Under applicable criminal law, the district court has jurisdiction over the target assets, and neither BlockFi nor its creditors have any standing to challenge the warrants. BlockFi's Committee of Unsecured Creditors nevertheless filed its adversary proceeding, seeking to prevent BlockFi from complying with the warrants, and enjoining the United States

---

[2] To the extent, if any, that this Motion constitutes a responsive pleading under Rule 7012, the Defendant United States does not consent to jurisdiction or the entry of final orders or judgments by the bankruptcy court.

[3] As discussed in further detail below, on November 28, 2022, BlockFi Inc.—the entity on which the warrants were served—filed for bankruptcy along with related entities. For the purpose of this Motion, "BlockFi" refers to all debtors in the bankruptcy action: BlockFi, Inc., BlockFi Trading LLC, BlockFi Lending LLC, BlockFi Wallet LLC, BlockFi Ventures LLC, BlockFi International Ltd., BlockFi Investment Products LLC, BlockFi Services Inc., and BlockFi Lending II LLC.

from prosecuting the motion to compel compliance with the warrants.  Withdrawal of the reference is mandatory in these circumstances and necessary to prevent further improper interference with the ongoing criminal case.[4]

Withdrawal of the reference is mandatory under 28 U.S.C. § 157(d) because (1) resolution of the adversary proceeding requires substantial and material consideration of non-bankruptcy law, including whether the issuing district court has sole authority and jurisdiction over assets subject to its warrants, whether Plaintiff has any standing to challenge the warrants, and whether the bankruptcy court's TRO violated constitutional separation of powers principles; and (2) the proceedings have more than a *de minimis* impact on interstate commerce because the non-bankruptcy law issues raised by the Adversary Complaint affect the United States' ability to enforce criminal law and seizure warrants against financial institutions like BlockFi.

## BACKGROUND

On October 27, 2022, a Grand Jury in the United States District Court for the Western District of Washington indicted Sergei Potapenko and Ivan Turõgin (the Criminal Defendants) for inducing hundreds of thousands of victims to pay more than $575 million for the purchase of contracts in a cryptocurrency mining service called HashFlare, and to invest in a virtual currency bank called Polybius Bank. *United States v. Potapenko*, Crim. No. 2-22-00185-RSL, (W.D. Wash. Oct. 27, 2022) (Crim. Dkt. No. 1) (the "Indictment" attached hereto as Exhibit 1).  The Indictment alleges the Criminal Defendants used some of the money to repay early investors and purloined the rest, as is typical in a traditional Ponzi scheme.  The Criminal Defendants then used shell companies and fraudulent documents to launder the stolen funds through various

---

[4] Given the exigent need to prevent interference with the criminal proceedings, the United States will also file a motion to expedite briefing on this Motion once the case is docketed in the district court.

financial institutions and virtual asset service providers ("VASPs"), including BlockFi.  The criminal case remains pending in the Western District of Washington.

Shortly before unsealing the Indictment, the Honorable Michelle Peterson, Magistrate Judge in the Western District of Washington, issued, and the United States served on BlockFi, four seizure warrants (the "Seizure Warrants") directing law enforcement to seize the contents of the named accounts (the "Subject Accounts").  *See* the Seizure Warrants attached hereto collectively as Exhibit 2, and the Bill of Particulars attached hereto as Exhibit 3.  Upon service of the warrants on November 16, 2022, BlockFi did not immediately comply.  Twelve days later, on November 28, 2022, BlockFi filed its Chapter 11 bankruptcy petition.[5]

On February 10 and 13, 2023, BlockFi partially complied with the warrants, transferring a portion of the cryptocurrency (the wallet balances) held in the Subject Accounts to the United States. *See  Potapenko*, U.S. Mot. to Compel (Crim. Dkt. 17) (Attached as Exhibit 4).  But BlockFi retained the vast majority of the cryptocurrency contained in those accounts, currently worth more than $35 million.  As Plaintiff alleges, BlockFi eventually agreed to enter a stipulation (the "Stipulation") to be filed in the Washington district court to comply with the warrants and transfer to the United States the remaining cryptocurrency in the Subject Accounts. *See* Adv. Compl. § 28 (Adv. Dkt. No. 1).  Before BlockFi was able to execute the stipulation, the Creditors Committee filed an adversary proceeding in the bankruptcy proceedings on May 22, 2023, asking the Bankruptcy Court to enjoin the United States and BlockFi from moving forward in the criminal proceedings. *Id.* §§ 35–43.  On the same day, the United States filed a motion to

---

[5] Counsel for BlockFi responded to the service on of the Warrants by saying "withdrawals from all accounts on the BlockFi platform continue to be on hold.  We will let you know once we receive further instructions on how these withdrawals would be resumed and would seek to address the liquidation instructions that you have provided at that time."

compel BlockFi to comply with the seizure warrants in the Western District of Washington.  *See* Ex. 4.

The Creditors Committee also sought and obtained two *ex parte* temporary restraining orders dated May 22 and May 26, 2023 from the bankruptcy court. Orders (Adv. Dkt. Nos. 4, 9) (attached as Exhibits 5 and 6).  The first TRO restrains BlockFi from executing its stipulation with the United States.  *See* Ex. 5.  The second TRO (A) enjoins the United States from "taking any act to obtain the property" at issue; and (B) affirmatively requires the United States to "either (i) take all necessary steps to adjourn all . . . procedural deadlines of the Motion to Compel pending further Order of this Court; or (ii) withdraw the Motion to Compel without prejudice." Ex. 6 at 4–5.  On May 26, 2023, BlockFi filed a response to the Motion to Compel, indicating that it would have consented to the transfer of assets subject to the Seizure Warrants, but for the Creditors Committee's filing. *See Potapenko,* Resp. (Crim Dkt. No. 24) (attached as Exhibit 7).

## ARGUMENT

## I.      MANDATORY WITHDRAWAL OF THE REFERENCE IS REQUIRED

### A.  The Adversary Proceeding Requires Substantial and Material Review of Federal Criminal Law

This Adversary Proceeding requires the court to resolve substantial and material questions of federal criminal law regarding whether an issuing court has sole authority and jurisdiction over assets subject to a warrant and who, if anyone, can challenge the warrant prior to completion of the criminal proceedings.  Resolution of these questions will have much more than a *de minimis* impact on interstate commerce because allowing the creditors of a financial institution to challenge and halt criminal forfeiture proceedings risks undermining the United States' ability to enforce compliance with criminal laws regulating and affecting interstate

commerce.  Pursuant to 28 U.S.C. § 157(d) and by the standards of the Third Circuit, withdrawal of the reference is mandatory.

District courts have original jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  Each district court may, however, "provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).  Pursuant to this authority, the United States District Court for the District of New Jersey has referred all bankruptcy cases filed in the district to the bankruptcy court.  No federal statute or rule, however, authorizes the delegation of criminal actions or forfeiture proceedings brought by the United States to the bankruptcy court.

28 U.S.C. § 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely notice of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Courts in the Third Circuit "have interpreted the mandatory withdrawal provision of § 157(d) to apply only where the action requires a 'substantial and material' consideration of federal law outside the Bankruptcy Code." *United States v. Delfasco, Inc.*, 409 B.R. 704, 707 (D. Del. 2009) (citing *In re Continental Airlines,* 138 B.R. 442, 444–46 (D. Del. 1992)). *See also Internal Revenue Service v. CM Holdings, Inc. (In re CM Holdings, Inc.),* 221 B.R. 715, 721 (D. Del. 1998); *Block v. Tammaro (In re Tammaro),* 56 B.R. 999, 1003 (D.N.J. 1986).  "Withdrawal is inappropriate 'when only a straightforward application of a federal law is required for resolution of the pending issue.'" *Delfasco* at 707.  Application of this standard furthers the

underlying policy of Section 157(d) to withdraw "matters requiring the application of non-bankruptcy law from the relatively less experienced bankruptcy court to the more experienced district court." *In re St. Mary Hospital,* 115 B.R. 495, 497 (E.D. Pa.1990).  "The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside of the Bankruptcy Code." *Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dep't Stores, Inc.),* 512 B.R. 736, 740 (S.D.N.Y. 2014) (citation omitted) (alteration in original).

Under these standards, withdrawal of the reference is mandatory for this Adversary Proceeding.  As explained further below, the adversary proceeding requires resolving substantial and material consideration of federal criminal and forfeiture law, such as whether (1) the district court in Washington has original and exclusive jurisdiction over the approximately $35 million in cryptocurrency at issue; and (2) federal non-bankruptcy law prohibits the Creditors' Committee from challenging compliance with the criminal warrants.  *See, e.g., United States v. DeMiro,* 446 B.R. 804, 807 (E.D. Mich. 2011) (granting mandatory withdrawal of reference of proceeding involving criminal forfeiture statutes and bankruptcy law); *United States v. One Parcel of Real Property*, 137 B.R. 802, 805 (D. Or. 1992) (finding that two civil forfeiture proceedings involved consideration of "laws regulating organizations or activities affecting interstate commerce").[6]  The subsequent entry of the second TRO, Ex. 6, now raises the additional substantial and material constitutional question of whether the TRO violates

---

[6] In addition to these substantial and material issues of non-bankruptcy law, the Adversary Complaint raises issues under Title 11: most prominently, whether criminal proceedings are exempted from the automatic stay. Section 362(b)(4) explicitly answers that criminal proceedings are not subject to the automatic stay. *See James v. Draper (In re James),* 940 F. 2d 46, 50-51 (3d Cir. 1991) ("A civil forfeiture action proceeding is an exception to the automatic stay under the 'police power' exception of section 362(b)(4)"). Because the Adversary Proceeding raises substantial and material question of non-bankruptcy law, along with the application of statutory text of Section 362(b)(4), the law mandates withdrawal of the reference.  *See* 28 U.S.C. § 157(d) (withdrawal of reference mandatory if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States").

separation of powers by improperly dictating the United States' litigation positions in an ongoing criminal proceeding.

### 1. The District Court in Washington Has Exclusive Jurisdiction Over Assets Subject to the Warrants

Once the Magistrate Judge in the Western District of Washington issued the Seizure Warrants, the district court obtained original and exclusive jurisdiction over the Subject Accounts.  Section 3231 of Title 18 grants to a district court jurisdiction over "all offenses against the laws of the United States."  District courts also have jurisdiction over any forfeiture "incurred under any act of Congress."  28 U.S.C. § 1355; *see also United States v. $6,190.00 in U.S. Currency*, 581 F.3d 881, 885 (9th Cir. 2009) (jurisdiction over forfeiture actions is premised on a violation of an Act of Congress).  An indictment alleging a violation of the federal criminal code and seeking forfeiture of assets based upon conviction of such violation necessarily falls under district court jurisdiction.  *See, e.g., United States v. Pelullo*, 178 F.3d 196 (3d Cir. 1999).  The District Court has no legal authority to delegate that jurisdiction to a bankruptcy court under 28 USC §§ 157, 1334 or otherwise.

The adversary complaint argues that the cryptocurrency assets are property of the estate and asks the Bankruptcy Court to enjoin transfer of those assets.  *See, e.g.,* Adv. Compl. ¶¶ 35–40.  Addressing those allegations necessarily requires the court to resolve whether the Washington district court maintains exclusive jurisdiction over assets subject to its warrants under the criminal laws.  This non-bankruptcy question is substantial and material to the case and thus, by itself, mandates withdrawal of the reference.

### 2. The Creditors Committee May Not File Any Action Against the United State or Intervene at this Stage in the Federal Criminal Case in Washington

BlockFi is only involved in this criminal action because the Criminal Defendants used the Subject Accounts to hold proceeds from their criminal activity and laundered funds. BlockFi's role as a VASP is similar to that of a financial institution holding a traditional fiat currency account—it is a third party with no right to contest the seizure, as are the creditors and any other parties to the bankruptcy action. Once an action is filed, third parties claiming an interest in property subject to forfeiture cannot intervene in the criminal proceedings until the conclusion of the underlying criminal case involving the forfeiture of such property. 21 U.S.C. § 853(k); *see also United States v. Lavin*, 942 F.2d 177, 182 (3d Cir. 1991) (third-party petitioners "are barred by 21 U.S.C. § 853(k)(1) from intervening in the true 'criminal case'"). "Nor may a third party commence an action at law or equity against the United States concerning the validity of the alleged interest after the United States files an indictment with a forfeiture allegation." *United States v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007) (*citing* 21 U.S.C. § 853(k)(2)); *see also Guildmaster, Inc. v. United States of America*, (*In re Guildmaster, Inc.*), Adv. No. 12-6068; 2013 WL 1331392 (Bankr. W.D. Mo. 2013) (dismissing complaint for turnover of seized property in a criminal forfeiture proceeding based on 21 U.S.C. 853(k)); *In re Global Vending, Inc.*, Adv. No. 04–2368, 2005 WL 2451763, at *3 (Bankr. S.D. Fla. 2005) (holding 21 U.S.C. § 853(k) bars the filing of a turnover and avoidance action).[7]

Only after the final order of forfeiture in a criminal case is issued may a third party challenge the forfeiture. 21 U.S.C. § 853(n). And then Section 853(n) provides two—*and only*

---

[7] Not only are parties prevented from interfering with the United States' enforcement of warrants, obstructing those efforts is a federal criminal offense. *See* 18 U.S.C. § 2232(a).

*two*—grounds for a third party to challenge the final forfeiture order: (A) where the third party had an interest superior to the defendant's; and (B) where the third party was a bona fide purchaser for value who was reasonably without cause to believe the property was subject to forfeiture.  21 U.S.C. § 853(n)(6)(A)-(B).  The forfeiture court would not hear any such third-party arguments until after a conviction in the criminal case.  In *Libretti v. United States*, the Supreme Court rejected defendant's argument that a § 853(n) proceeding inadequately protected third parties' interests.  116 S.Ct. 356 (1995).  The Court emphasized that "Congress has determined that § 853(n). . . provides the means by which third-party rights must be vindicated." *Id.* at 365.

The adversary complaint asks the Bankruptcy Court to enjoin compliance with the warrants.  *See* Adv. Compl. ¶¶ 35–43. And Plaintiffs sought and obtained *ex parte* TROs purporting to grant Plaintiff authority to intervene in the forfeiture proceedings and enjoin the United States from prosecuting the warrants.  *See* Exs. 5, 6. The court must resolve whether these actions are barred by criminal law prohibiting efforts to "intervene" or "commence an action" to establish the validity of interests in property subject to forfeiture.  21 U.S.C. § 853(k). This substantial and material question of criminal law provides another independent reason that withdrawal of the reference is mandatory here.

### 3.  The Constitution Bars the Bankruptcy Court from Interfering with the United States' Prosecution of the Criminal Proceedings

Courts have recognized a separation of powers concern in dictating the United States' litigation positions in ongoing criminal proceedings.  For instance, in *United States v. Cox*, 342 F.2d 167 (5th Cir. 1965) (en banc), the Court concluded: "[i]t follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal

prosecutions." *Id.* at 171.  The second TRO affirmatively requires the United States to take "all necessary steps" to adjourn the criminal proceedings, or to "withdraw the Motion to Compel." Ex. 6 at 4–5.  In doing so, the bankruptcy court interfered with the Executive Branch's discretion in prosecuting the criminal proceedings, preventing the United States from filing pleadings, and ordering the United States to request specific relief against its will, which violates constitutional separation of powers.  This constitutional concern raises a substantial and material issue which further supports mandatory withdrawal of the reference.

**B. Federal Criminal Law Has More Than a *De Minimis* Impact on Interstate Commerce.**

Withdrawal of the reference is mandatory here because the criminal questions implicated by the Adversary Complaint, and the United States' ability to enforce seizure warrants against financial institutions like BlockFi, have much more than a *de minimis* impact on interstate commerce.

Questions raised by the Adversary Proceeding concerning the scope of the criminal court's authority over assets subject to warrants and the standing of third-parties to challenge criminal warrants affect interstate commerce because those questions implicate the United States' ability to enforce criminal law.  Indeed, impact on interstate commerce is a central part of the crimes alleged in the Indictment.  The Indictment alleges the Criminal Defendants committed wire fraud and conspiracy to commit wire fraud, Ex. 1, at 12, ¶ 5(bb), which require proof that they "transmit[ed] or cause[d] to be transmitted by means of wire, radio, or television communications in interstate or foreign commerce . . ."  *See* 18 U.S.C. §§ 1343, 1349.  The Indictment also alleges a money laundering conspiracy under 18 U.S.C. § 1956(h), asserting that the Criminal Defendants "knowingly conduct[ed] and attempt[ed] to conduct financial transactions affecting interstate and forfeit commerce."  Ex. 1 at 16, ¶ 23(a).  For a money

laundering charge, "[t]he nexus with interstate commerce is both a jurisdictional requirement and an essential element of the offense." *United States v. Bazuaye*, 240 F.3d 861, 863 (9th Cir. 2001) (citation omitted).  In a similar prosecution involving cryptocurrency, the Ninth Circuit recently held that a defendant who engaged in money laundering using "the transfer of bitcoin through a digital wallet, which by its nature invokes a wide and international network" met the "'minimal' interstate commerce nexus required under § 1956." *United States v. Costanzo*, 956 F.3d 1088, 1092-93 (9th Cir. 2020) (citing *Bazuaye*).  Because the underlying alleged crimes affect interstate commerce, efforts to enforce those criminal laws, including through asset forfeiture, also necessarily impact interstate commerce.

More fundamentally, the adversary complaint challenges the United States' ability to enforce warrants against financial institutions like BlockFi.  Allowing creditors to intervene or, as is the case here, enjoin the United States from prosecuting warrants risks undermining financial institutions' compliance with federal criminal law and warrants, which has more than a *de minimis* impact on interstate commerce.  *See, e.g. United States v. One Parcel of Real Property,* 137 B.R. at 805 (finding that two civil forfeiture proceedings involved consideration of "laws regulating organizations or activities affecting interstate commerce within the terms of section 157(d)".)

### C.  This Motion is Timely Filed

The final prong for mandatory withdrawal of the reference in the Third Circuit requires that the motion for withdrawal to be timely filed.  28 U.S.C. § 157(d).  Whether a motion to withdraw is timely filed depends on the circumstances surrounding to proceeding for which withdrawal is sought. *See, e.g, CM Holdings, Inc.,* 221 B.R. at 720 (motion timely within a reasonable time after objection to claim filed).

Plaintiff filed its Adversary Complaint on May 22, 2023, and the summons was issued on May 23, 2023.  The Bankruptcy Court entered its two *ex parte* temporary restraining orders on May 22 and May 26.  Hearing on the preliminary injunction motion is scheduled on June 15, and defendants' opposition briefs are due June 12.  The United States files this Motion a little more than two weeks after the issuance of the summons, before responding to the complaint or the motion for preliminary injunction.  In fact, this Motion is the United States' first filing in the adversary proceeding.  Accordingly, the Motion to Withdraw the Reference is timely.

## II.  ALTERNATIVELY, PERMISSIVE WITHDRAWAL OF THE REFERENCE IS APPROPRIATE

Even if the District Court determines that mandatory withdrawal is not required here, it should nonetheless grant permissive withdrawal because the Adversary Proceeding raises predominantly non-core claims and withdrawal would promote judicial efficiency.

With respect to permissive withdrawal, Third Circuit cases offer general guidelines for consideration, such as whether a matter is core or non-core, promotion of uniformity in bankruptcy administration, reducing forum-shopping and confusion, fostering the economical use of debtor/creditor resources, expediting the bankruptcy process and the timing of the request for the withdrawal, and whether a jury trial has been requested.  *In re Pruitt,* 910 F. 2d 1160, 1168 (3d Cir. 1990).  *See also Homeland Stores, Inc. v. Burris,* 204 B.R. 427, 434 (D.Del. 1997); *NDEP Corp. v. HANDL-IT, Inc.,* 203 B.R. 905, 908 (D. Del. 1996).

### A.  The Adversary Proceeding Raises Non-Core Claims

Permissive withdrawal of the reference is appropriate for non-core proceedings.  A proceeding is a core proceeding if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.  *See, e.g., CoreStates Bank, N.A. v. Huls Am., Inc.,* 176 F. 3d 187, 196 (3d Cir. 1999).  By this standard,

this Adversary Proceeding is non-core, because it attempts to enjoin the United States' criminal

asset seizure and forfeiture proceeding which the bankruptcy court has no jurisdiction to enjoin

and which it is prohibited to enjoin by virtue of the federal criminal law.

Similarly, while the adversary proceeding purports to assert claims under the bankruptcy

code, the bankruptcy court is barred by federal criminal and forfeiture law from considering

those claims, because the federal district court has exclusive jurisdiction over the assets. *See*

*supra* § I(A)(1).

### B.    Withdrawal Here Will Promote Efficiency and Economy

Permissive withdrawal will foster economical use of resources and promote judicial

efficiency.  This Adversary Proceeding involves unquestionably non-core federal criminal and

forfeiture issues.  On appeal from the bankruptcy court, the legal issues concerning the

jurisdiction of the court and standing of the parties would be reviewed *de novo*.  Permissive

withdrawal will allow the District Court to consider those issues in the first instance, which in

turn will expedite the process and promote judicial economy and economical use of the parties'

resources.

Further, because the Creditors Committee demanded a jury trial in its adversary

proceeding complaint, the Bankruptcy Court may not conduct a jury trial without a special

designation by the district court and the express consent of the parties.  *See* 28 USC § 157(e).

The United States does not consent to a jury trial on any issues in the bankruptcy court.

Finally, permissive withdrawal is particularly appropriate here to discourage parties from

interfering with federal criminal actions and forfeiture proceedings over which the bankruptcy

courts have no jurisdiction and where such interference by the parties would violate 21 U.S.C. §

853 and 18 U.S.C. § 2232(a).

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests mandatory withdrawal of the reference for the Adversary Proceeding, or, in the alternative, permissive withdrawal.

RESPECTFULLY SUBMITTED:  May 31, 2023

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General


/s/ Seth B. Shapiro
RUTH A. HARVEY
KEVIN P. VANLANDINGHAM
SETH B. SHAPIRO (D.C. Bar No. 433988)
JESSICA L. COLE
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 875, Ben Franklin Station
Washington D.C. 20044
TEL: (202) 514-7164
FAX: (202) 514-9163
Email: seth.shapiro@usdoj.gov

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2023 a true and correct copy of this motion to withdraw the reference and proposed order was duly served upon all parties to the adversary proceeding via the Court's electronic case filing system (ECF).

/s/ Seth B. Shapiro
SETH B. SHAPIRO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI, INC., *et al.* | Bankr. Case No. 22-19361 (MBK) |
| Debtors. | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS | Adv. Pro. No. 23-01144 |
| Plaintiff, | District Court Case No. |
| v. | |
| BLOCKFI, INC., et alia and UNITED STATES OF AMERICA, | |
| Defendants. | |

## <u>ORDER GRANTING MOTION TO WITHDRAW THE REFERENCE</u>

On this day, the Court considered the United States of America's motion for withdrawal of the reference of adversary proceeding no. 23-01144 (Official Committee of Unsecured Creditors v. BlockFi, Inc. and the United States of America, filed pursuant to <u>28 U.S.C. § 157(d)</u> and <u>Federal Rule of Bankruptcy Procedure 5011</u>, it is hereby

ORDERED THAT:  the reference of the adversary proceeding no. 23-01144 is hereby withdrawn from the bankruptcy court to the District Court.

Signed this _____ day of _____, 2023.

_____
United States District Court Judge

# EXHIBIT 1

Presented to the Court by the foreman of the
Grand Jury in open Court, in the presence of
the Grand Jury and FILED in the U.S.
DISTRICT COURT at Seattle, Washington.

October 27 2022

Ravi Subramanian, Clerk

By_____ Deputy

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

SERGEI POTAPENKO and
IVAN TURÕGIN,

Defendants.

NO. **CR22-185** RSL

**INDICTMENT**

The Grand Jury charges that:

## INTRODUCTION

**A.    Defendants and Co-conspirators**

1.    At times relevant to this Indictment, the following individuals were involved in the conspiracies and charges set forth herein:

a.    The defendant, SERGEI POTAPENKO ("POTAPENKO"), an Estonian citizen residing in Tallinn, Estonia;

b.    The defendant, IVAN TURÕGIN, also known as Ivan Turygin ("TURÕGIN"), an Estonian citizen residing in Tallinn, Estonia;

c.      "Co-conspirator #1," an Estonian citizen residing in Baar, Switzerland;

d.      "Co-conspirator #2," a Belarusian citizen residing in Minsk, Republic of Belarus;

e.      "Co-conspirator #3," an Estonian citizen residing in Tallinn, Estonia; and

f.      "Co-conspirator #4," an Estonian citizen residing in Loksa, Estonia.

**B.      Summary of Fraud and Money-Laundering Schemes**

2.      Beginning no later than about December 2013, and continuing through at least August 2022, POTAPENKO and TURÕGIN, and others, engaged in a series of interrelated fraudulent solicitations related to virtual currency. Through these solicitations, defendants induced at least hundreds of thousands of investors around the world, including in the Western District of Washington, to invest in and otherwise purchase virtual currency-related products and services based on their materially false and fraudulent pretenses, representations, and promises. POTAPENKO and TURÕGIN, and others, used the proceeds from each solicitation to fund the next solicitation; convinced victims to roll their investment interests over from one solicitation to the next; and, even more brazenly, simply kept (stole) the money victims had invested.

3.      In total, through the scheme and artifice to defraud, POTAPENKO and TURÕGIN, and others, induced hundreds of thousands of victims to collectively transfer more than $550 million to accounts the defendants owned and controlled.

4.      POTAPENKO and TURÕGIN, and others, using additional false and fraudulent representations, fabricated documents, and by deceit, siphoned off significant portions of the investor funds for their personal gain and benefit. More specifically, POTAPENKO and TURÕGIN, and others, funneled fraudulently-obtained victim funds through a convoluted network of shell companies, bank accounts, virtual asset service

Indictment - 2
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

providers, and virtual currency wallets, all of which they owned and controlled, directly or indirectly. They also created fraudulent documents, which they provided to financial institutions to explain their unlawful money movement, all to conceal the nature, location, source, ownership, and control of the funds.

5.     POTAPENKO and TURÕGIN, and others, then used the laundered proceeds to fund an extravagant lifestyle at the expense of the victim investors.

**C.     Background on Virtual Currency and Mining**

6.     Virtual currency is a type of digital asset. Unlike traditional currency (which is sometimes called "fiat currency"), virtual currency is not issued by any government or bank. Rather, users generate and exchange virtual currency using computers operating on decentralized, peer-to-peer networks.

7.     There are thousands of virtual currencies in use. Bitcoin is the most popular form of virtual currency. Other types of virtual currency can collectively be referred to as "altcoins."

8.     Virtual currency mining is the process of using computers to generate new virtual currency for profit. Computers mine currency by performing operations that validate transactions and maintain the security of the virtual currency network. These verified transactions make up a decentralized, unchangeable ledger of virtual currency transactions called the "blockchain." Virtual currency miners receive newly-created currency as a reward for using their computer power to complete the operations.

9.     Virtual currency mining operations require substantial computer processing power. The greater a mining operation's processing power, the more virtual currency it can be expected to produce. Processing power is measured by "hashrate," which reflects the number of calculations that the computer can perform per second.

10.     "Cloud mining" or "remote mining" is an economic arrangement in which participants can, in essence, rent a specified amount of hashrate from a mining operation

Indictment - 3
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

for an agreed period of time (the contract period). During the contract period, the participant is entitled to receive a portion of the virtual currency generated by the mining operation. The participant's share of the mining proceeds is based on the amount of hashrate purchased.

11.     Virtual currency holders typically use tools known as "wallets" to send, receive, and store virtual currency. Wallets vary widely in terms of their format and technological sophistication. One variety, known as "hosted" (or "custodial") wallets, are virtual currency wallets controlled by a third party—often, a company with a cloud-based, encrypted wallet platform that may be hosted on the company's servers. Users of hosted wallets may be able to access the company's platform through various digital devices, much like a traditional online banking experience. Hosted wallet providers include virtual currency exchanges, which allow their customers, for a fee, to exchange virtual currency for other virtual currencies and/or fiat currencies.

## COUNT 1

### (Conspiracy to Commit Wire Fraud)

12.     The allegations set forth in Paragraphs 1 through 11 of this Indictment are re-alleged and incorporated as if fully set forth herein.

A.     **Offense**

13.     Beginning in or around December 2013, and continuing through at least August 2019, in King County, within the Western District of Washington, and elsewhere, the defendants, SERGEI POTAPENKO and IVAN TURÕGIN, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree together to commit an offense against the United States, to wit: to knowingly and willfully devise and execute, and attempt to execute, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises; and in executing and attempting to

Indictment - 4
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

execute this scheme and artifice, to knowingly cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain signs, signals and sounds, as further described below, in violation of Title 18, United States Code, Section 1343.

**B.    Object of the Conspiracy**

14.    The object of the conspiracy was for the defendants to unjustly enrich themselves and their associates by, among other things: (a) inducing participants to purchase and invest in virtual currency-related products, services, and ventures through materially false and fraudulent pretenses, representations, and promises as to the use and purpose of investment funds, the technical capabilities of the virtual currency venture, and the performance and returns of the investments; (b) diverting investor funds to virtual currency wallets and financial accounts under their custody and control; (c) utilizing investor funds for personal gain and benefit; and (d) concealing the misappropriation of investor funds through fraud and deception.

**C.    Manner and Means of the Conspiracy**

15.    The manner and means used to accomplish the conspiracy included, but are not limited to, the following:

**1.    HashCoins**

a.    Beginning no later than December 2013, POTAPENKO and TURÕGIN , and others, began operating HashCoins OÜ ("HashCoins") in Estonia. HashCoins purported to manufacture and sell virtual currency mining hardware and equipment to customers worldwide.

b.    HashCoins advertised the sale of equipment capable of mining different types of virtual currencies including Bitcoin and various altcoins. HashCoins required customers to pay for the equipment in full at the time the customer ordered the equipment.

Indictment - 5
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c.      In reality, throughout the period of its operation, HashCoins did not manufacture mining equipment. Instead, HashCoins sometimes purchased, assembled, and resold components manufactured by other companies. Further, HashCoins had minimal mining equipment inventory in stock and had minimal access to additional inventory. As a result, and as POTAPENKO and TURÕGIN knew, HashCoins lacked the capacity to deliver the equipment to customers on the scale, and according to the timeline, promised to customers.

d.      POTAPENKO and TURÕGIN, and others, misled customers about HashCoins' ability and intention to fulfill orders. For instance, in response to customer complaints, HashCoins cited a variety of reasons to postpone deliveries, such as purported delays in the hardware certification process, driver or software updates, and production and licensing delays. Defendants denied customers' requests for refunds. Despite knowing that HashCoins had been unable to fulfill the majority of existing orders dating back to 2014, and that HashCoins would be unable to obtain additional inventory to cover those or future orders, POTAPENKO and TURÕGIN, and others, by and through their operation of HashCoins, continued to market the sale of virtual currency mining hardware and equipment well into 2016.

e.      In or around May 2015, in an effort to placate customers, and to avoid refunding customers' payments for equipment that HashCoins had failed to deliver, HashCoins informed some customers that their undelivered virtual currency mining hardware and equipment was being substituted with "remote mining" or "contract mining" services. HashCoins told customers that, instead of receiving physical machines as promised, they would receive rights under mining contracts entitling the customer to a percentage of profits from a pooled remote mining operation known as HashFlare.

Indictment - 6
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### 2. HashFlare

f.    POTAPENKO and TURÕGIN, and others, publicly launched HashFlare (www.hashflare.io) in approximately February 2015. HashFlare purported to sell access to hashrate generated by equipment HashFlare claimed to own and operate. According to HashFlare's website:

> Our service makes cryptocurrency mining available to every user. You no longer need to buy expensive equipment and spend your time setting up miners. Just select your desired capacity and earn income!
>
> *****
>
> Cloud mining offers a unique option for mining with a low cost of entry as well as minimal risk and expense, which is opposite to traditional models of mining that involve procurement, maintenance and configuration of highly specialized software.

Further, HashFlare advertised and represented that it conducted virtual currency mining in collaboration with HashCoins, which provided technical support, development, and marketing for HashFlare.

g.    The HashFlare website enabled customers to purchase virtual currency mining capacity (hashrate) for a predetermined price. Customers paid for the hashrate using credit cards, bank wires, and virtual currency transfers.

h.    POTAPENKO and TURÕGIN, and others, represented that HashFlare customers would receive virtual currency generated by HashFlare's mining equipment proportionate to their allocated hashrate. Customers could access their HashFlare accounts through the website and view their balance, namely, the amount of virtual currency they had purportedly generated through mining activity. HashFlare regularly updated the balances to reflect the purportedly ongoing mining activity. Defendants represented that customers could instantly withdraw their balance, or, if they chose, reinvest the proceeds to purchase additional hashrate.

Indictment - 7
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         i.     HashFlare's Terms of Service stated that HashFlare "enables

2 individuals to remotely mine Cryptocurrencies for themselves using our Mining

3 Hardware . . .." Further, "Miners will be able to receive Cryptocurrencies on the basis of

4 the processing power of the Cloud Machine [HashFlare's remote mining network] and

5 the period of time for which the Cloud Machine is mining. . . Those Cryptocurrencies

6 will be transferred to your wallet upon request, if such request is confirmed."

7         j.     POTAPENKO and TURÕGIN, and others, through the entities they

8 operated and controlled, collected more than $550 million from customers seeking to

9 purchase virtual currency mining capacity on hashflare.io.

10        k.     POTAPENKO and TURÕGIN, and others, operated HashFlare as a

11 Ponzi scheme. HashFlare did not own or lease the virtual currency mining equipment

12 necessary to service its contracts. In reality, during the course of its operation, HashFlare

13 engaged in virtual currency mining activity at a rate estimated to be less than one percent

14 of the hashrate sold to customers for Bitcoin mining, and less than three percent of the

15 hashrate sold to customers for altcoin mining.

16        l.     The virtual currency returns and balances presented on investors'

17 accounts were wholly fraudulent because HashFlare had not produced the represented

18 virtual currency. To conceal this fact, when investors submitted requests to withdraw

19 their mining proceeds, defendants either resisted making payments or paid off the

20 investors using virtual currency defendants had simply purchased on the open market, as

21 opposed to currency generated by genuine mining operations.

22        m.     POTAPENKO and TURÕGIN, and others, acquired pre-existing

23 corporate entities from a third-party vendor engaged in the sale of shell companies and

24 used these shell companies as fronts to provide the appearance of legitimacy and to

25 deceive customers, vendors, and financial institutions regarding the true nature of

26 HashFlare's operations and the use of victim funds.

27

Indictment - 8
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

n.     POTAPENKO and TURÕGIN, and others, opened accounts at financial institutions and virtual asset service providers located in many countries, often in the names of shell companies and other individuals, known and unknown, working with them. POTAPENKO and TURÕGIN, and others, transferred large amounts of victim funds to and through these accounts, which they controlled, to facilitate the fraud, such as to purchase virtual currency used to pay back investors, to finance related ventures, and to funnel funds to themselves and their associates for personal gain and benefit.

o.     To make the fund transfers appear legitimate and lawful, POTAPENKO and TURÕGIN, and others, submitted false information and fabricated documents, including fake invoices and contracts, related to their business ventures. For instance, POTAPENKO and TURÕGIN, and others, falsely represented to multiple banks that shell companies, which they controlled and operated, provided products and services to HashFlare, thereby providing a false pretext for large incoming fund transfers into shell company bank accounts.

**3.     Defendants' Refusal to Return HashFlare Victim Funds**

p.     POTAPENKO and TURÕGIN, and others, continuously caused HashFlare to unilaterally change the terms and conditions of its services. As the amount of new and returning customers diminished over time, POTAPENKO and TURÕGIN, and others, took steps to avoid paying returns to HashFlare customers.

q.     For example, HashFlare imposed both minimum and maximum withdrawal amounts, materially restricting the amounts of purported returns customers could retrieve from their HashFlare accounts. A customer with purported returns below the minimum amount was blocked from making withdrawals, while a customer with substantial purported returns could only withdraw modest amounts at a time.

Indictment - 9
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

r.     On July 19, 2018, HashFlare imposed a so-called Know-Your-Customer ("KYC") requirement upon customers, which mandated that users submit identification and other information before they could continue using the platform or make withdrawals. In fact, POTAPENKO and TURÕGIN, and others, used the KYC requirement as a pretext to obstruct and delay customers' abilities to make withdrawals from their accounts.

s.     On July 20, 2018, HashFlare announced that it was shutting down its bitcoin mining hardware, and that it would no longer service the bitcoin mining contracts. HashFlare justified this action by claiming that, due to increased costs, bitcoin mining was no longer profitable. By refusing to service contracts, defendants deprived investors of the rights, which they had previously purchased, to earn cryptocurrency generated by ongoing mining operations. HashFlare continued to offer for sale contracts for mining of altcoins through August 2019.

t.     Notwithstanding their claims that virtual currency mining had become unprofitable, the defendants diverted substantial investor funds toward the purchase and use of virtual currency mining equipment, which defendants then used for their own personal benefit.

**4.     Polybius**

u.     By no later than April 2017, leveraging what they represented to be the success of HashCoins and HashFlare, and using diverted victim funds, POTAPENKO, TURÕGIN, and others, created a new Estonian company called Polybius Foundation OÜ. POTAPENKO, TURÕGIN, and others, represented that Polybius would form a financial institution specializing in virtual currency, which would be called Polybius Bank. Defendants caused the following advertisement to be posted online:

Indictment - 10
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



v.   POTAPENKO, TURÕGIN, and others, announced that Polybius Bank would be funded through an "initial coin offering" (ICO), in which investors would receive virtual tokens called Polybius tokens (symbol: PLBT). Defendants produced a prospectus stating that the PLBT tokens "represent[ed] the right to receive a part of the distributable profits" of Polybius. The prospectus represented that the proceeds of the ICO would be used to finance Polybius Bank, and that "the funds raised by the sale of the tokens will be retained by the Polybius Foundation until they will be used."

w.   The defendants and their associates disseminated the Polybius prospectus to prospective investors using a HashCoins mailing list, Twitter, and the content distribution network PRNewswire, among other methods.

x.   The marketing materials also advertised that the newly created bank would employ advanced technologies and offer unique services. On April 11, 2017, HashFlare sent a mass email to its customers, titled "Introducing Polybius Bank!" promoting Polybius Bank, which it called "a real revolution in the world of digital crypto-banking," directing recipients to Polybius's website (www.polybius.io), and soliciting interest in the upcoming ICO.

y.   Defendants launched the ICO in or about May 2017. POTAPENKO, TURÕGIN, and others, used a virtual asset service provider based in the Western District

Indictment - 11
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of Washington to store investment proceeds. On June 13, 2017, POTAPENKO,

TURÕGIN, and others, caused an article to be published on the PRNewswire with the

subheading: "Polybius cryptobank ICO has raised over $6 million in under three days,

meeting the requirements to receive a European banking license."

z.     Defendants raised at least $25 million from third-party investors

through the ICO. Contrary to their representations that all proceeds would be retained by

Polybius and used to fund Polybius Bank, defendants caused the bulk of the funds raised

through the ICO to be transferred to bank accounts and virtual currency wallets

controlled by POTAPENKO, TURÕGIN, and their co-conspirators.

aa.     Not long after completion of the ICO in June 2017, Polybius

publicly dropped any pretext that it intended to build a digital bank. POTAPENKO and

TURÕGIN did not use the investment proceeds to create a digital bank as represented to

investors, and to date, they have not paid the investors any dividends.

**5.     Use of Interstate and Foreign Wires**

bb.     POTAPENKO and TURÕGIN, and others, used, and caused to be

used, the interstate and foreign wires in various ways in furtherance of their scheme to

defraud. For example, HashFlare emailed invoices for the purchase of hashrate to victims

in the Western District of Washington via interstate and foreign wire transmissions that

originated outside of Washington. Similarly, investors funded their purchases of hashrate

from HashFlare by means of interstate and foreign wire transmissions, including

transmissions originating in the Western District of Washington and terminating outside

of Washington. In addition, defendants caused the transfer of virtual currency, which was

falsely represented to be the proceeds of virtual currency mining, to virtual currency

wallets and through virtual asset service providers located within the Western District of

Washington by means of wire transmissions originating outside of Washington.

Defendants promoted the Polybius offering by sending emails that originated outside of

Indictment - 12
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington and terminated in the Western District of Washington. Finally, defendants deposited investor proceeds from their Polybius offering to a wallet hosted by a virtual currency services provider located in the Western District of Washington. Defendants' transactions and communications with this provider caused wire transactions terminating and originating in the Western District of Washington.

All in violation of Title 18, United States Code, Section 1349.

<u>COUNTS 2–17</u>

**(Wire Fraud)**

16.     The allegations set forth in Paragraphs 1 through 15 of this Indictment are re-alleged and incorporated as if fully set forth herein.

17.     Beginning at a time unknown, but approximately in or about December 2013, and continuing through at least August 2019, in King County, within the Western District of Washington, and elsewhere, the defendants, SERGEI POTAPENKO and IVAN TURÕGIN, and others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

18.     The essence of the scheme and artifice to defraud is set forth in Paragraph 14 of this Indictment and is re-alleged and incorporated as if fully set forth herein.

19.     The manner and means of the scheme and artifice to defraud are set forth in Paragraph 15 of this Indictment and are re-alleged and incorporated as if fully set forth herein.

20.     On or about the dates set forth below, in King County, within the Western District of Washington, and elsewhere, the defendants, and others known and unknown to the Grand Jury, having devised a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and

Indictment - 13
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

promises, did knowingly transmit, and cause to be transmitted, the following writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme, by means of wire communication in interstate and foreign commerce, each of which caused the transmission of an electronic signal between a location outside the state of Washington and within the state of Washington, and each of which constitutes a separate count of this Indictment:

| Count | Date(s) | Wire Transmission |
|-------|---------|-------------------|
| 2 | 5/31/2017 | Email from hashflare.io to Victim #1 announcing that Polybius ICO crowdfunding has started, sent from outside of Washington to Victim #1 in the Western District of Washington |
| 3 | 12/12/2017 | Purchase of hashrate initiated by Victim #2, within the Western District of Washington, which caused an electronic signal to be sent outside the Western District of Washington |
| 4 | 12/15/2017 | Email from hashflare.io attaching invoice for purchase of hashrate for virtual currency mining activity, sent from outside of Washington to Victim #2 in the Western District of Washington |
| 5 | 12/15/2017 | Purchase of hashrate initiated by Victim #2, within the Western District of Washington, which caused an electronic signal to be sent outside the Western District of Washington |
| 6 | 12/16/2017 | Purchase of hashrate initiated by Victim #3, within the Western District of Washington, which caused an electronic signal to be sent outside the Western District of Washington |
| 7 | 12/17/2017 | Email from hashflare.io attaching invoice for purchase of hashrate for virtual currency mining activity, sent from outside of Washington to Victim #3 in the Western District of Washington |

Indictment - 14
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Date(s) | Wire Transmission |
|-------|---------|-------------------|
| 8 | 12/21/2017 | Purchase of hashrate initiated by Victim #3, within the Western District of Washington, which caused an electronic signal to be sent outside the Western District of Washington |
| 9 | 12/24/2017 | Transfer of Bitcoin from a virtual currency wallet, located outside the State of Washington, to a wallet controlled by Victim #3, within the Western District of Washington, represented as proceeds from virtual currency mining activity |
| 10 | 2/1/2018 | Transfer of Bitcoin from a virtual currency wallet, located outside the State of Washington, to a wallet controlled by Victim #3, within the Western District of Washington, represented as proceeds from virtual currency mining activity |
| 11 | 2/1/2018 | Transfer of Bitcoin from a virtual currency wallet, located outside the State of Washington, to a wallet controlled by Victim #4 within the Western District of Washington, represented as proceeds from virtual currency mining activity |
| 12 | 4/30/2018 | Email from hashflare.io attaching invoice for purchase of hashrate for virtual currency mining activity, sent from outside of Washington to Victim #2 in the Western District of Washington |
| 13 | 5/1/2018 | Email from hashflare.io attaching invoice for purchase of hashrate for virtual currency mining activity, sent from outside of Washington to Victim #2 in the Western District of Washington |
| 14 | 5/1/2018 | Purchase of hashrate initiated by Victim #2, within the Western District of Washington, which caused an electronic signal to be sent outside the Western District of Washington |
| 15 | 5/3/2018 | Email from hashflare.io attaching invoice for purchase of hashrate for virtual currency mining activity, sent from outside of Washington to Victim #2 in the Western District of Washington |

Indictment - 15
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Date(s) | Wire Transmission |
|---|---|---|
| 16 | 5/3/2018 | Purchase of hashrate initiated by Victim #2, within the Western District of Washington, which caused an electronic signal to be sent outside the Western District of Washington |
| 17 | 5/4/2018 | Purchase of hashrate initiated by Victim #2, within the Western District of Washington, which caused an electronic signal to be sent outside the Western District of Washington |

21.     The Grand Jury further alleges that these crimes were committed during, and in furtherance of, the offense charged in Count 1.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 18

### (Conspiracy to Commit Money Laundering)

22.     The allegations set forth in Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated as if fully set forth herein.

**A.     The Offense**

23.     Beginning at a time unknown to the Grand Jury, but no later than April 2015, and continuing through at least August 2022, within the extraterritorial jurisdiction of the United States, at King County, within the Western District of Washington, and elsewhere, the defendants, SERGEI POTAPENKO and IVAN TURÕGIN, and others known and unknown to the Grand Jury, knowingly combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit:

a.     to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Section 1349, and Wire Fraud in violation of Title 18,

Indictment - 16
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b. to transmit and transfer, and attempt to transmit and transfer, monetary instruments and funds, including one or more virtual currencies, from a place in the United States, to and through a place outside the United States, and to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Section 1349, and Wire Fraud in violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Code, Sections 1956(a)(2)(A); and

c. to knowingly engage and attempt to engage in monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Section 1349, and Wire Fraud in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957.

**B.     Object of the Conspiracy**

24.     The objects of the conspiracy were:

a. to conceal and disguise the nature, location, source, ownership, and control of proceeds of Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Section 1349, and Wire Fraud in violation of Title 18, United States Code, Section 1343;

Indictment - 17
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.      to promote the carrying on of Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Section 1349, and Wire Fraud in violation of Title 18, United States Code, Section 1343; and

c.      to illegally enrich the conspirators.

**B.      Manner and Means of Conspiracy**

25.     The manner and means used to accomplish the conspiracy include, but are not limited to, the following:

a.      POTAPENKO and TURÕGIN, and others, accepted HashFlare victim payments in the form of fiat and virtual currencies, which promoted the HashFlare Ponzi scheme. POTAPENKO and TURÕGIN, and others, transferred these HashFlare victim payments to accounts and wallets held outside of the United States.

b.      During the conspiracy, POTAPENKO and TURÕGIN, and others, engaged in financial transactions designed to conceal the nature, location, source, ownership, and control of proceeds of the wire fraud conspiracy and direct those proceeds to accounts held for their benefit. Some of the wire fraud proceeds comprised funds in accounts holding United States dollars and virtual currency held in wallets hosted by virtual asset service providers based in the United States.

c.      The defendants used shell companies, including Dalmeron Projects LP ("Dalmeron") and Ecohouse Networks LP, and then created bank accounts in the names of those shell companies. The defendants and others provided fraudulent documentation to the financial institutions with false explanations of the nature and sources of funds transferred to those bank accounts. To support POTAPENKO and TURÕGIN's false statements about Dalmeron's role, the defendants, co-conspirator #3, co-conspirator #4, and others created and sent sham and misleading documents, such as fake contracts and invoices for the services that Dalmeron supposedly performed.

d.      To justify the movement of funds from one entity they controlled to another, the defendants, co-conspirator #2, co-conspirator #3, co-conspirator #4, and

Indictment - 18
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     others fabricated loan agreements. They then transferred funds between accounts held at

2     different financial institutions, providing the fake loan agreements as the reason for the

3     transfers.

4             e.       POTAPENKO and TURÕGIN, and others, also transferred funds

5     between accounts holding United States dollars and accounts holding Euros in order to

6     further conceal the nature, location, and source of victim funds.

7             f.       POTAPENKO, TURÕGIN, co-conspirator #1, and others opened

8     accounts at virtual asset service providers, in their own names or in the names of entities

9     that they controlled. POTAPENKO, TURÕGIN, and others also controlled numerous

10     unhosted wallets. POTAPENKO, TURÕGIN, and co-conspirator #1 maintained control

11     and approval over deposits of HashFlare victim funds and Polybius ICO proceeds into

12     various accounts, including addresses at virtual asset service providers and unhosted

13     wallets. Some of the virtual asset service providers used by the defendants to engage in

14     financial transactions are located in the United States, including one or more

15     headquartered in the Western District of Washington.

16             g.       POTAPENKO and TURÕGIN, and others, transferred large

17     amounts of bitcoin representing HashFlare victim funds from their accounts at a virtual

18     asset service provider using a series of transactions in which a smaller amount of bitcoin

19     is transferred to a new address each time. In each transaction, some quantity of bitcoin

20     "peeled off" the chain to a new address, and the remaining balance transferred to the next

21     address in the chain. POTAPENKO and TURÕGIN used this "peel chain" technique to

22     conceal the movement of HashFlare customer funds to bitcoin addresses that were used

23     to repay other victims. POTAPENKO and TURÕGIN used these transactions to

24     perpetuate their fraud by preventing victims from discovering that HashFlare lacked the

25     represented mining operations.

26

27

Indictment - 19
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

        h.      POTAPENKO and TURÕGIN, and others, also transferred HashFlare victim payments to an account at a virtual asset service provider they controlled and converted customer funds from one type of virtual currency to another before repaying victims with the purpose of concealing the source of the virtual currency sent to victims.

        j.      POTAPENKO and TURÕGIN, and others, transferred some of the remaining HashFlare victim payments to accounts and wallets they and their co-conspirators controlled, including but not limited to, unhosted wallets, an account used to make travel and clothing-related purchases, and for the purchase of virtual currency mining equipment. POTAPENKO and TURÕGIN, and others known and unknown, engaged in monetary transactions of more than $10,000 derived from victims of the HashFlare Ponzi Scheme and the Polybius ICO to and from accounts held in their names or the names of entities they owned and controlled.

        All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION

        26.     The allegations set forth in Paragraphs 1 through 25 of this Indictment are re-alleged and incorporated as if fully set forth herein.

        27.     Upon conviction of any of the offenses charged in Counts 1 to 17, SERGEI POTAPENKO and IVAN TURÕGIN shall each forfeit to the United States any property constituting or derived from proceeds such defendant obtained directly or directly, as a result of the offense. All such property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c). This property includes, but is not limited to, a sum of money reflecting the proceeds such defendant personally obtained from the offense.

        28.     Upon conviction of the offense charged in Count 18, SERGEI POTAPENKO and IVAN TURÕGIN shall each forfeit to the United States any property

Indictment - 20
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

involved in the offense. All such property is forfeitable pursuant to Title 18, United States Code, Section 982(a)(1). This property includes, but is not limited to, a sum of money reflecting the property involved in such offense.

29.     **Substitute Assets.** If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or,

    e.     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of any other property of the defendant, up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

## FINDINGS AS TO FORFEITURE NEXUS

30.     The allegations set forth in Paragraphs 1 through 29 of this Indictment are re-alleged and incorporated as if fully set forth herein.

31.     The grand jury further finds probable cause to believe that, upon conviction of the offense charged in Count 18 of this Indictment, SERGEI POTAPENKO and IVAN TURÕGIN shall each forfeit to the United States as property involved in the offense, pursuant to 18 U.S.C. § 982(a)(1):

    a.     the following real properties located in Estonia:

        1. Tartu mnt 83, Kesklinna linnaosa, Tallinn, Harju County (Units: 103, 407, 501, 502, 503, 504, 505, 506, PK5, PK6, PK7, PK34, PK37, PK38, PK39, PK41, PK42, PK43, PK44)

Indictment - 21
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2. Kiikri tn 2, Kesklinna linnaosa, Tallinn, Harju County (Units: 32, 42, 47, 54, 65, 66, 70, 71, 72, 76, P-58, P-59, P-61, P-62, P-77, P-78, P-79, P-80, P-81, P-82, P-89, P-90, P-96, P-97, P-98, P-99, P-100, P-101, P-104, P-105);

3. Padriku tee 9, Pirita District, Tallinn, Harju County, 3-5 (building no. 3);

4. Supluse pst 1, Pirita linnaosa, Tallinn, Harju County;

5. Padriku tee 16, Pirita District, Tallinn, Harju County, 4-11 (building no. 4);

6. Mardisalu tn 2, Peetri alevik, Rae vald, Harju County;

7. Mardisalu tn 8, Peetri alevik, Rae vald, Harju County;

8. Häälinurme tn 9, Peetri alevik, Rae vald, Harju County;

9. Lauri tee 9, Pirita District, Tallinn, Harju County;

10. Lauri tee 9a, Pirita District, Tallinn, Harju County;

11. Padriku tee 9, Pirita District, Tallinn, Harju County, 2-2 (building no. 2);

12. Kuusenõmme tee 19, Pirita District, Tallinn, Harju County;

13. Villardi tn 11-5, Kesklinna District, Tallinn, Harju County, 5;

14. Villardi tn 11-G4, Kesklinna District, Tallinn, Harju County, G4;

15. Kuusenõmme tee 17, Pirita District, Tallinn, Harju County;

16. Kuusenõmme tee T3, Pirita District, Tallinn, Harju County;

17. Kuusenõmme tee 15, Pirita District, Tallinn, Harju County;

18. Rannasalu tee 81a, Katase Village, Alutaguse Parish, Ida-Viru County;

19. Rannasalu tee 81b, Katase Village, Alutaguse Parish, Ida-Viru County;

Indictment - 22
United States v. Potapenko, et al.
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

20. Rannasalu tee 81c, Katase Village, Alutaguse Parish, Ida-Viru County;

21. Võrgu tee, Katase Village, Alutaguse Parish, Ida-Viru County;

22. Rannasalu tee 123, Katase Village, Alutaguse Parish, Ida-Viru County;

23. Kaare, Katase Village, Alutaguse Parish, Ida-Viru County;

24. Kadaku, Katase Village, Alutaguse Parish, Ida-Viru County;

25. Rannasalu tee 83a, Katase Village, Alutaguse Parish, Ida-Viru County;

26. Käbi, Katase Village, Alutaguse Parish, Ida-Viru County;

27. Rebasesaba tee 6, Pirita District, Tallinn, Harju County, 2;

28. Järvemetsa tee 5, Peetri Small Borough, Rae Parish, Harju County;

b.    the following vehicles located and registered in Estonia:

1. one 2018 Audi A7 Sportback (gray), registered to Burfa Media OÜ;

2. one 2019 BMW X7 M50D (gray), registered to Burfa Media OÜ;

3. one Lexus RX450H (dark green), registered to Felamay OÜ;

4. one 2018 Mercedes-Benz AMG G 63 (gray), registered to Ivan Turõgin;

5. one 2017 Audi SQ7s (gray), registered to Burfa Tech OÜ; and

6. one 2017 Audi SQ7s (gray), registered to Burfa Tech OÜ.

c.    all funds in the following bank accounts located in Estonia:

1. AS LHV Pank account with IBAN EE947700771004802203, held in the name of Felmaway OÜ;

Indictment - 23
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2. AS LHV Pank account with IBAN EE627700771002171363, held in the name of Sergei Potapenko; and

d. the following virtual currencies and associated funds:

1. all funds—including cryptocurrencies—from a Bitcoin Suisse account associated with the bitcoin deposit address of 3Mf6LDdHGUCnFddz1CRxkBF6gWrC3RDSpR located in Switzerland;

2. all bitcoin, and any and all virtual currency derived therefrom, held by public address 3CCxFk5tDkzbbJ6qJ1j3XTchh6yBuNahFd;

3. all ether, and any and all virtual currency derived therefrom, held by public address 0xfF575a22975CC413771825EB84c163189A4d5D22;

4. all bitcoin, and any and all virtual currency derived therefrom, held by public address 38zkvJL6ZSM8tS7DFw4V37gBxqj8VVBFS9;

5. all bitcoin, and any and all virtual currency derived therefrom, held by public address 3JQZFeomJtgQvfhJPriibVVUcmDDvbCu4L;

6. all ether, and any and all virtual currency derived therefrom, held by public address 0x37Aa343C7b3A8d5cB7E1D53e262BcE5c56840DC0;

7. all ether, and any and all virtual currency derived therefrom, held by public address 0x05524556b53254ea27bF85C572Ff173A9b72e049;

Indictment - 24
*United States v. Potapenko, et al.*
USAO No. 2019R01037

8. all bitcoin, and any and all virtual currency derived therefrom, held by public address 33oxyJj3rUyY9h9A2LMev8hGp9LfTPRFPT;

9. all bitcoin, and any and all virtual currency derived therefrom, held by public address bc1qq7t39xw5zmquvrxqpcw4xmrmj968geueufjwh9;

10. all bitcoin, and any and all virtual currency derived therefrom, held by public address bc1q3neh8n6e0e2hqp5v50498je5kjp5nv0s52j6sy;

11. all bitcoin, and any and all virtual currency derived therefrom, held by public address bc1qu7w3m03juknja5ecc8fr9zn2umcfc3rkmypwk5;

12. all ether, and any and all virtual currency derived therefrom, held by public address 0x6B0fAA0f7F52CDEa18802AeAbfA6CFD18D2B3785;

13. all ether, and any and all virtual currency derived therefrom, held by public address 0x586fe50a5D373fBa9EfcF0fdEca9C62979E855Ed;

14. all ether, and any and all virtual currency derived therefrom, held by public address 0xBB15B769E9Faf9A86186Db6a12aB72A6f56AE7d1; and

15. all bitcoin, and any and all virtual currency derived therefrom, held by public address 3M19ou5uw5CYzw34tgZnbSWMk3gsSwhNL3.

*(items d.2-d.15 are believed to be located in Estonia);*

Indictment - 25
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.  the following virtual currency miners and equipment located in
    Estonia:

    1.  135 INNO3D P106*9 miners located at Narva-2 Container,
        NRN02-E;

    2.  135 INNO3D P106*9 miners located at Narva-2 Container,
        NRN02-F;

    3.  352 INNO3D P106*9 miners located at Laki DC, LKI03;

    4.  408 INNO3D P106*9 miners located at Narva-1, NRV01-A;

    5.  408 INNO3D P106*9 miners located at Narva-1, NRV01-B;

    6.  408 INNO3D P106*9 miners located at Narva-1, NRV01-C;

    7.  408 INNO3D P106*9 miners located at Narva-1, NRV01-D;

    8.  483 INNO3D P106*9 miners located at Narva-2, NRN02-B; and

    9.  483 INNO3d P106*9 miners located at Narva-2, NRN02-C.

    10. 380 INNO3D P104*7 miners located at Narva-2, NRN02-C;

    11. 126 Antminer S17PRO miners located at Narva-1, NRV01-E;

    12. 136 Antminer S17PRO miners located at Narva-1, NRV01-F;

    13. 188 Antminer S19JPRO miners located at Narva-1, NRV01-F;

    14. 198 Antminer S19JPRO miners located at Narva-1, NRV01-E;
        and

    15. 240 Antminer S17PRO miners located at Narva-2 Container,
        NRN02-F.

Indictment - 26
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A TRUE BILL:

DATED: ~~10/28/2022~~ 10/27/2022

*Signature of Foreperson redacted pursuant*
*to the policy of the Judicial Conference of*
*the United States.*

_____
FOREPERSON

NICHOLAS W. BROWN
United States Attorney

BRENT S. WIBLE
Acting Chief, Money Laundering and Asset Recovery Section
Criminal Division, Department of Justice

ANDREW C. FRIEDMAN
Assistant United States Attorney

SETH WILKINSON
Assistant United States Attorney

JEHIEL I. BAER
Assistant United States Attorney

ADRIENNE E. ROSEN
Trial Attorney
Money Laundering and Asset Recovery Section
Criminal Division, Department of Justice

OLIVIA ZHU
Trial Attorney
Money Laundering and Asset Recovery Section
Criminal Division, Department of Justice

Indictment - 27
*United States v. Potapenko, et al.*
USAO No. 2019R01037

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Defendant Status Sheet**
(Prepare ONE for EACH defendant)

| | |
|---|---|
| **Defendant Status** | Defendant Name: SERGIO POTAPENKO <br><br> Is there already a charging document filed for this defendant for this case in this district? <br><br> ☐ Yes  ☒ No  If yes:  Select Charging Doc Type <br><br> If yes, please enter the cause number below: <br><br>     CR Enter CR Cause Number here.  or  MJ Enter MJ Cause Number here. <br><br> Has the Defendant had an initial appearance in this case in this district?  ☐ Yes  ☒ No |
| **Defendant Location** | ☐ At the FDC under the cause number indicated above. <br><br> ☐ **At the FDC under a different cause number:** Enter different cause number here. <br><br> ☐ In custody under this cause number in another District: Enter other District here. <br><br> ☐ In custody (different cause number) in another District: Enter other info here. <br><br> ☐ In local custody: Enter local jurisdiction here. <br><br> ☐ In the community on supervision under cause number: Enter cause number here. <br><br> ☒ At large. <br><br> ☒ Other: Located in a foreign country |
| **Release** | ☐ Continue Conditions of release <br><br> ☐ Continue Detention <br><br> ☒ Not set; temporary detention; detention hearing scheduled for: TBD |
| **Arraignment** | ☒ Warrant to Issue (MUST complete *Defendant Arrest Warrant Info Sheet*). <br><br> ☐ Summons to be issued for: <br><br>     ☐ Defendant Address: Click or tap here to enter text. <br><br> ☐ Letter to defense counsel for appearance on: Click or tap to enter a date. <br><br>     ☐ Defense Counsel name and address: Click or tap here to enter text. |
| **Trial** | Estimated trial length (days): 14 days |

**Defendant Status Sheet**
(Prepare ONE for EACH defendant)

| | |
|---|---|
| **Defendant Status** | Defendant Name: IVAN TUROGIN<br><br>Is there already a charging document filed for this defendant for this case in this district?<br><br>☐ Yes   ☒ No         If yes:  Select Charging Doc Type<br><br>If yes, please enter the cause number below:<br><br>     CR Enter CR Cause Number here.   or   MJ Enter MJ Cause Number here.<br><br>Has the Defendant had an initial appearance in this case in this district?   ☐ Yes   ☒ No |
| **Defendant Location** | ☐ At the FDC under the cause number indicated above.<br><br>☐ **At the FDC under a different cause number:** Enter different cause number here.<br><br>☐ In custody under this cause number in another District: Enter other District here.<br><br>☐ In custody (different cause number) in another District: Enter other info here.<br><br>☐ In local custody: Enter local jurisdiction here.<br><br>☐ In the community on supervision under cause number: Enter cause number here.<br><br>☒ At large.<br><br>☒ Other: Located in a foreign country |
| **Release** | ☐ **Continue Conditions of release**<br><br>☐ **Continue Detention**<br><br>☒ Not set; temporary detention; detention hearing scheduled for: TBD |
| **Arraignment** | ☒ Warrant to Issue (MUST complete *Defendant Arrest Warrant Info Sheet*).<br><br>☐ Summons to be issued for:<br><br>    ☐ Defendant Address: Click or tap here to enter text.<br><br>☐ Letter to defense counsel for appearance on: Click or tap to enter a date.<br><br>    ☐ Defense Counsel name and address: Click or tap here to enter text. |
| **Trial** | Estimated trial length (days): 14 days |

# EXHIBIT 2

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

### for the

Western District of Washington



CERTIFIED TRUE COPY
ATTEST: RAVI SUBRAMANIAN
Clerk, U.S. District Court
Western District of Washington

By _____
Deputy Clerk

In the Matter of the Seizure of
*(Briefly describe the property to be seized)*
All funds and virtual currencies from BlockFi account
*0718, opened on or around March 11, 2021, in the
name of Burfa Media OÜ*

)
)
)
)
)

Case No. **2:22-mc-00101-MLP**

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____Western_____ District of _____Washington_____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

*All funds—including virtual currencies—from BlockFi account dde28f21-f27c-4231-bcea-df59fb4d0718, opened on or around March 11, 2021, in the name of SERGEI POTAPENKO, with a business name of Burfa Media OÜ and email address mblock@burfa.com. The United States has made the requisite showings pursuant to 18 U.S.C. § 981(b) and 21 U.S.C § 853 (f) for issuance of this dual civil and criminal warrant.

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____11/24/2022_____
                                                                                        *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.        ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to _____ any Magistrate Judge in the District _____ .
                        *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days (not to exceed 30)        ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     11/10/2022 at 12:15  pm          _____
                                                                                                    *Judge's signature*

City and state:     Seattle, Washington                              The Hon. Michelle L. Peterson, U.S. Magistrate Judge
                                                                                          *Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington



CERTIFIED TRUE COPY
ATTEST: RAVI SUBRAMANIAN
Clerk, U.S. District Court
Western District of Washington

By _____
Deputy Clerk

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>All funds and virtual currencies from BlockFi account<br>*6a6f, opened on or around July 30, 2020, in the<br>name of Anton Altement* | )<br>)<br>)<br>)<br>) |

Case No. **2:22-mc-00101-MLP**

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ Western _____ District of _____ Washington _____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

*All funds—including virtual currencies—from BlockFi account 4af22a77-8a7d-4f83-9aee-183a5b0c6a6f, opened on or around July 30, 2020, in the name of Anton Altement, with a business name of Polybius Foundation OÜ and email address anton.altement@polybius.io. The United States has made the requisite showings pursuant to 18 U.S.C. § 981(b) and 21 U.S.C § 853(f) for issuance of this dual civil and criminal warrant.

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____ 11/24/2022 _____
(not to exceed 14 days)

☑ in the daytime 6:00 a.m. to 10:00 p.m.       ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to _____ any Magistrate Judge in the District _____ .
(United States Magistrate Judge)

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days (not to exceed 30)       ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____ 11/10/2022 at **12:15** pm _____    _____
Judge's signature

City and state:   _____ Seattle, Washington _____    _____ The Hon. Michelle L. Peterson, U.S. Magistrate Judge _____
Printed name and title

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington



CERTIFIED TRUE COPY
ATTEST: RAVI SUBRAMANIAN
Clerk, U.S. District Court
Western District of Washington

By _____
Deputy Clerk

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| All funds and virtual currencies from BlockFi account | ) | Case No. **2:22-mc-00101-MLP** |
| *cf50, opened on or around June 14, 2021, in the | ) | |
| name of Anton Altement* | ) | |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ Western _____ District of _____ Washington _____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:
*All funds—including virtual currencies—from BlockFi account 68805533-a940-40dd-a2b3-ec398baecf50, opened on or around June 14, 2021, in the name of Anton Altement, with a business name of Polybius Ventures OÜ, and email address polybius.ventures@polybius.io. The United States has made the requisite showings pursuant to 18 U.S.C. § 981(b) and 21 U.S.C § 853(f) for issuance of this dual civil and criminal warrant.*

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____ 11/24/2022 _____
(not to exceed 14 days)

☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to
_____ any Magistrate Judge in the District _____ .
(United States Magistrate Judge)

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days (not to exceed 30)   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    11/10/2022 at 12:15 pm        _____
                                                              *Judge's signature*

City and state:   Seattle, Washington                The Hon. Michelle L. Peterson, U.S. Magistrate Judge
                                                          *Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken: | | |

| Certification |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____

*Executing officer's signature*

_____

*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

Western District of Washington



CERTIFIED TRUE COPY
ATTEST: RAVI SUBRAMANIAN
Clerk, U.S. District Court
Western District of Washington

By _____
Deputy Clerk

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>All funds and virtual currencies from BlockFi account<br>*9421, opened on or around October 1, 2020, in the<br>name of SERGEI POTAPENKO* | )<br>)<br>)<br>)<br>) |

Case No. **2:22-mc-00101-MLP**

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____Western_____ District of _____Washington_____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:
*All funds—including virtual currencies—from BlockFi account 9de727bf-d1b6-472f-836c-d994a2fc9421, opened on or around October 1, 2020, in the name of SERGEI POTAPENKO with email address sergei.potapenko@gmail.com. The United States has made the requisite showings pursuant to 18 U.S.C. § 981(b) and 21 U.S.C § 853(f) for issuance of this dual civil and criminal warrant.

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____11/24/2022_____
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to _____any Magistrate Judge in the District_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days (not to exceed 30)   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   ____11/10/2022 at 12:15 pm____   _____
*Judge's signature*

City and state:   ____Seattle, Washington____   ____The Hon. Michelle L. Peterson, U.S. Magistrate Judge____
*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

| Certification |
|---|

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# EXHIBIT 3

Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

SERGEI POTAPENKO AND
IVAN TURÕGIN,

        Defendant.

NO. CR22-185-RSL

**FORFEITURE BILL
OF PARTICULARS**

The United States, by and through its undersigned counsel, submits this Forfeiture Bill of Particulars pursuant to Federal Rule of Criminal Procedure 32.2(a).

1. As alleged in the Indictment, the United States is seeking the forfeiture of property in this case. Dkt. No. 1.

2. The United States hereby provides the following bill of particulars related to the forfeiture allegations contained in the Indictment, and alleges that, pursuant to Title 18, United States Code, Section 982(a)(1), that upon conviction of the *Conspiracy to Commit Money Laundering* offense changed in Count 18 of the Indictment, Defendants SERGEI POTAPENKO and IVAN TURÕGIN shall forfeit to the United States any property involved in, or traceable to, such offenses.

This property includes, but is not limited to, all funds, including virtual currencies, from the following accounts held by BlockFi as of November 16, 2022:

    a.  account dde28f21-f27c-4231-bcea-df59fb4d0718, opened on or around March 11, 2021, in the name of Sergei Potapenko, with a business name of Burfa Media OÜ and email address mblock@burfa.com;

    b.  account 4af22a77-8a7d-4f83-9aee-183a5b0c6a6f, opened on or around July 30, 2020, in the name of Anton Altement, with a business name of Polybius Foundation OÜ and email address anton.altement@polybius.io;

    c.  account 68805533-a940-40dd-a2b3-ec398baecf50, opened on or around June 14, 2021, in the name of Anton Altement, with a business name of Polybius Ventures OÜ, and email address polybius.ventures@polybius.io; and

    d.  account 9de727bf-d1b6-472f-836c-d994a2fc9421, opened on or around October 1, 2020, in the name of Sergei Potapenko with email address sergei.potapenko@gmail.com.

DATED this 1st day of March, 2023.

KENNETH A. POLITE, JR.
Assistant Attorney General

*s/Adrienne E. Rosen*
Adrienne E. Rosen
Olivia Zhu
Trial Attorneys
US Department of Justice, Criminal Division
Money Laundering and Asset Recovery Section
1400 New York Avenue NW
Washington, District of Columbia 20005
Phone: 202-616-2690
Email: adrienne.rosen@usdoj.gov
        olivia.zhu@usdoj.gov

Forfeiture Bill of Particulars - 2
*United States v. Potapenko, et al.,* CR22-18- RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically serves the parties of record.

*s/Adrienne E. Rosen*
Adrienne E. Rosen
Trial Attorney
US Department of Justice, Criminal Division
Money Laundering and Asset Recovery Section
1400 New York Avenue NW
Washington, District of Columbia 20005
Phone: 202-616-2690
Email: adrienne.rosen@usdoj.gov

Forfeiture Bill of Particulars - 3
*United States v. Potapenko, et al.,* CR22-18- RSL

# EXHIBIT 4

Honorable Robert S. Lasnik

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13

| UNITED STATES OF AMERICA, | NO. 2:22-CR-00185-RSL |
|---|---|
| Plaintiff, | **UNITED STATES' MOTION TO COMPEL BLOCKFI TO COMPLY WITH SEIZURE WARRANTS** |
| v. | |
| SERGEI POTAPENKO and IVAN TURÕGIN, | Note on Motion Calendar: June 2, 2023 |
| Defendants. | |

14
15
16
17

## I.    INTRODUCTION

18    In this criminal prosecution, the United States alleges that Sergei Potapenko and
19 Ivan Turõgin (the Defendants) induced hundreds of thousands of victims to pay more than
20 $575 million for the purchase of contracts in a cryptocurrency mining service called
21 HashFlare, and to invest in a virtual currency bank called Polybius Bank. The United States
22 further alleges that the Defendants used some of the money to repay early investors and
23 purloined the rest, as is typical in a traditional Ponzi scheme. The Defendants then used
24 shell companies and fraudulent documents to launder the stolen funds through various
25 financial institutions and virtual asset service providers ("VASPs").

26
27

Motion to Compel BlockFi to Comply
with Seizure Warrants - 1
*United States v. Potapenko, et al.*, CR22-185 RSL

US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
MONEY LAUNDERING AND ASSET RECOVERY SECTION
1400 NEW YORK AVE NW
WASHINGTON, DC 20005
(202) 514-1263

BlockFi[1] is one of the VASPs Defendants used to hide their laundered funds. Shortly before the unsealing of the indictment in this matter, the Honorable Michelle Peterson issued, and the United States served, four seizure warrants directing law enforcement to seize the contents of the Subject Accounts.[2]  Upon service on November 16, 2022, BlockFi did not immediately comply with the warrants.  Twelve days later, on November 28, 2012, BlockFi filed a Chapter 11 bankruptcy petition.[3]

On February 10 and 13, 2023, BlockFi partially complied with the warrants, transferring a portion of the cryptocurrency held in the Subject Accounts to the United States. However, it has retained the vast majority of the cryptocurrency contained in those accounts, currently worth more than $30 million. Counsel for the United States and BlockFi have had extensive discussions about whether the bankruptcy impacts BlockFi's legal obligation to comply with the warrants.  BlockFi and the United States agree that BlockFi is legally required to comply with the warrants and transfer to the United States the cryptocurrency in the subject accounts not previously transferred in February.  The United States and BlockFi have negotiated a stipulation providing for this result.

BlockFi's bankruptcy filing, however, has complicated the matter.  Earlier today, May 22, 2023, the Official Committee of Unsecured Creditors (the "Committee") filed a Verified Adversary Complaint in the bankruptcy case asking the bankruptcy court to enjoin BlockFi from complying with the seizure warrants issued by a Magistrate Judge of

---

[1] As discussed in further detail below, on November 28, 2022, BlockFi Inc.—the entity on which the warrants were served—filed for bankruptcy along with related entities.  For the purpose of this Motion, "BlockFi" refers to all debtors in the bankruptcy action: BlockFi, Inc., BlockFi Trading LLC, BlockFi Lending LLC, BlockFi Wallet LLC, BlockFi Ventures LLC, BlockFi International Ltd., BlockFi Investment Products LLC, BlockFi Services Inc., and BlockFi Lending II LLC.

[2] The Subject Accounts are defined *infra*, at 3.

[3] Counsel responded to the service on of the Warrants by saying "withdrawals from all accounts on the BlockFi platform continue to be on hold.  We will let you know once we receive further instructions on how these withdrawals would be resumed, and would seek to address the liquidation instructions that you have provided at that time."

Motion to Compel BlockFi to Comply
with Seizure Warrants - 2
*United States v. Potapenko, et al.*, CR22-185 RSL

US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
MONEY LAUNDERING AND ASSET RECOVERY SECTION
1400 NEW YORK AVE NW
WASHINGTON, DC 20005
(202) 514-1263

1  this Court. Consequently, rather than proceeding by presenting the Court with a Stipulation

2  setting forth a plan for BlockFi to complete its obligation to comply with the seizure

3  warrants, the United States files this motion. The United States respectfully asks this Court

4  to enter the Proposed Order compelling BlockFi to comply with the Seizure Warrants over

5  the Committee's objection, because original and exclusive jurisdiction lies in this Court—

6  not the Bankrupty Court.

## II.    BACKGROUND

8  On October 27, 2022, the grand jury returned an indictment (the "Indictment")

9  against the Defendants, charging conspiracy to commit wire fraud, in violation of 18 U.S.C.

10  § 1349; wire fraud in violation of 18 U.S.C. § 1343; and conspiracy to commit money

11  laundering, in violation of 18 U.S.C. § 1956(h). Dkt. No. 1. The Indictment included

12  forfeiture allegations providing notice to Defendants of the United States' intention to seek

13  forfeiture of all assets involved in the money-laundering conspiracy.

14  On November 10, 2022, the Honorable Michelle L. Peterson signed four Warrants

15  to Seize Property Subject to Forfeiture (the "Warrants") which required law enforcement

16  to seize "[a]ll funds—including virtual currencies" from accounts held at BlockFi Inc. (the

17  "Subject Accounts")[4]:

18      a. account dde28f21-f27c-4231-bcea-df59fb4d0718, opened on or around March
19         11, 2021, in the name of Sergei Potapenko, with a business name of Burfa Media
20         OÜ and email address mblock@burfa.com;

21      b. account 4af22a77-8a7d-4f83-9aee-183a5b0c6a6f, opened on or around July 30,
22         2020, in the name of Anton Altement, with a business name of Polybius
       Foundation OÜ and email address anton.altement@polybius.io;

---

[4] The Warrants also indicate that "[t]he United States has made the requisite showing pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f) for issuance of this dual civil and criminal warrant" (*id.*)—that is, they contained funds involved in the money laundering described above.

Motion to Compel BlockFi to Comply
with Seizure Warrants - 3
*United States v. Potapenko, et al.*, CR22-185 RSL

US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
MONEY LAUNDERING AND ASSET RECOVERY SECTION
1400 NEW YORK AVE NW
WASHINGTON, DC 20005
(202) 514-1263

c.  account 68805533-a940-40dd-a2b3-ec398baecf50, opened on or around June 14, 2021, in the name of Anton Altement, with a business name of Polybius Ventures OÜ, and email address polybius.ventures@polybius.io; and

d.  account 9de727bf-d1b6-472f-836c-d994a2fc9421, opened on or around October 1, 2020, in the name of Sergei Potapenko with email address sergei.potapenko@gmail.com.

*Id.* The United States served the Warrants on BlockFi on November 16, 2022.

On November 28, 2022, BlockFi filed a voluntary petition for bankruptcy pursuant to Title 11, jointly administered under the case styled *In re BlockFi, Inc., et al.*, Case No. 22-19361 (MBK), pending in the United States Bankruptcy Court for the District of New Jersey. On March 1, 2023, the United States filed a Forfeiture Bill of Particulars specifically identifying the contents of the Subject Accounts as property involved in the money-laundering conspiracy and therefore subject to forfeiture in the instant case pursuant to 18 U.S.C. § 982(a)(1). Dkt. No. 9.

## III. DISCUSSION

***The District Court Has Original and Exclusive Jurisdiction Over the Subject Accounts.***

As soon as a Magistrate Judge in the Western District of Washington issued the Warrants, the district court obtained original and exclusive jurisdiction over the Subject Accounts. Section 3231 of Title 18 grants to a district court jurisdiction over "all offenses against the laws of the United States." District courts also have jurisdiction over any forfeiture "incurred under any act of Congress." 28 U.S.C. § 1355. *See also United States v. $6,190.00 in U.S. Currency*, 581 F.3d 881, 885 (9th Cir. 2009) (jurisdiction over forfeiture actions is premised on a violation of an Act of Congress). An indictment alleging a violation of the federal criminal code and seeking forfeiture of assets based upon conviction of such violation necessarily falls under district court jurisdiction.[5]

---

[5] This is true even if the indictment does not specifically identify property subject to forfeiture; the Federal Rules of Criminal Procedure require only general allegations of forfeiture sufficient to give notice to defendants that the

Motion to Compel BlockFi to Comply
with Seizure Warrants - 4
*United States v. Potapenko, et al.*, CR22-185 RSL

US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
MONEY LAUNDERING AND ASSET RECOVERY SECTION
1400 NEW YORK AVE NW
WASHINGTON, DC 20005
(202) 514-1263

1    The existence of BlockFi's pending bankruptcy action does not change the

2    jurisdictional analysis.  Though a voluntary petition for bankruptcy operates as an

3    automatic stay of actions or proceedings against the debtors' property, this stay is subject

4    to certain exceptions.  11 U.S.C. § 362(b).  Relevant here is the exception under 11 U.S.C.

5    § 362(b)(4) providing "that a bankruptcy filing does not stay the actions of a governmental

6    unit enforcing its police or regulatory power."  *See, e.g.*, *United States v. Klein (In re*

7    *Chapman)*, 264 B.R. 565, 572 (B.A.P. 9th Cir. 2001) (criminal forfeiture action excepted

8    from automatic stay under section 362(b)(4)); *In re Perry Petroleum Equip. LTD, Inc.*, 564

9    B.R. 821, 824 (Bankr. M.D. Penn. 2017) (the automatic stay does not apply to

10   commencement or continuation of a criminal action or proceeding against the debtor).  The

11   purpose of the exception is that bankruptcy should not be "a haven for wrongdoers."

12   *Universal Life Church, Inc. v. United States (In re Universal Life Church)*, 128 F.3d 1294,

13   1297 (9th Cir. 1997).

14   To determine whether property falls within the section 362(b)(4) exception, courts

15   use two tests: the "pecuniary purpose test" and the "public policy test."  *In re Berg*, 230

16   F.3d 1165, 1167 (9th Cir. 2000).  Where, as here, the government is pursuing a "matter of

17   public safety and welfare" rather than a governmental "pecuniary interest," and the

18   government action is designed to "effectuate public policy" rather than adjudicate "private

19   rights," both tests have been satisfied, and the § 362(b)(4) exception applies.  *Id.*  The

20   Subject Accounts therefore did not become property of the bankruptcy estate.  *See, e.g., In*

21   *re VPH Pharmacy, Inc.*, Case No. 18-11280, 2018 WL 3574721, at *3 (E.D. Mich. July

---

23   government intends to seek forfeiture upon conviction.  Fed. R. Crim. P. 32.2(a) (the indictment must "contain[] notice
24   to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with
     the applicable statute," but "[t]he indictment or information need not identify the property subject to forfeiture"); *see*
25   *also United States v. Lo*, 839 F.3d 777, 791-92 (9th Cir. 2016) (defendant not entitled to notification that the
     government sought forfeiture of specific property).

27   Motion to Compel BlockFi to Comply                US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
     with Seizure Warrants - 5                     MONEY LAUNDERING AND ASSET RECOVERY SECTION
     *United States v. Potapenko, et al.*, CR22-185 RSL        1400 NEW YORK AVE NW
                                                              WASHINGTON, DC 20005
                                                                (202) 514-1263

25, 2018) ("the seized [accounts] are not property of the bankruptcy estate."); *In re Thena Inc.*, 190 B.R. 407 (D. Or. 1995) (assets seized for forfeiture do not constitute estate property). This comports with the conclusion that this Court has original and exclusive jurisdiction, *and the bankruptcy court never obtained jurisdiction*. The fact that the Subject Accounts are now listed on Schedule F in the bankruptcy action does not make them part of the bankruptcy estate or remove them from this Court's jurisdiction. *See* 28 U.S.C. § 1334(a) ("[e]xcept as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11"). The fate of the Subject Accounts was decided before the bankruptcy petition was filed—on the date the Warrants were served. BlockFi must therefore comply with the Warrants.

### A Third Party in The Criminal Forfeiture Action Has No Right to Intervene at This Stage of Litigation.

BlockFi is only involved in this criminal action because the Subject Accounts hold funds that represent the proceeds of criminal activity and were laundered by the Defendants. Its role as a VASP is similar to that of a financial institution holding a traditional fiat currency account—it is a third party with no right to contest the seizure, as are the creditors and any other parties to the bankruptcy action. Once an action is filed, third parties cannot intervene in a matter involving forfeiture until the conclusion of the criminal case involving the forfeiture of such property. 21 U.S.C. § 853(k). "Nor may a third party commence an action at law or equity against the United States concerning the validity of the alleged interest after the United States files an indictment with a forfeiture allegation." *United States v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007) (citing 21 U.S.C. § 853(k)(2)).[6]

---

[6] This principle is so axiomatic that any effort to impair the United States *from taking property subject to seizure into its custody or control* is a federal criminal offense. 18 U.S.C. § 2232(a).

Motion to Compel BlockFi to Comply
with Seizure Warrants - 6
*United States v. Potapenko, et al.*, CR22-185 RSL

US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
MONEY LAUNDERING AND ASSET RECOVERY SECTION
1400 NEW YORK AVE NW
WASHINGTON, DC 20005
(202) 514-1263

Section 853(n) of Title 21 provides two—*and only two*—grounds for a third party to challenge the entry of a final order of forfeiture in a criminal case: (A) where the third party had an interest superior to the defendant's; and (B) where the third party was a bona find purchaser for value who was reasonably without cause to believe the property was subject to forfeiture. 21 U.S.C. § 853(n)(6)(A)-(B). The Court would not hear any such third-party arguments until after a conviction in the criminal case. In *Libretti v. United States*, the Supreme Court rejected defendant's argument that a § 853(n) proceeding inadequately protected third parties' interests. 116 S.Ct. 356 (1995). The Court emphasized that "Congress has determined that § 853(n). . . provides the means by which third-party rights must be vindicated." *Id.* at 365. There is therefore no mechanism for BlockFi or anyone else to challenge the seizure of the Subject Accounts at this time.

***The Committee of Unsecured Creditors Does Not Have Standing to Stop Compliance With the Warrants.***

The Committee was appointed pursuant to 11 U.S.C. § 1102(a). The purpose of the Committee is solely "to monitor the operations and activities of the debtor and its compliance with the requirements of the Bankruptcy Code." *In re Diversified Capital Corp*, 89 B.R. 826, 829 (Bankr. C.D. Cal. 1988) (citation omitted). It does not change the legal framework created by the Bankruptcy Code's automatic stay exception under § 362(b)(4) which provides the government with a right "that is not available to a non-governmental entity." *Chapman*, 264 B.R. at 571. Any objection by the Committee, therefore, does not alter BlockFi's obligations to comply with Warrants served prior to the filing of the bankruptcy petitions.

Motion to Compel BlockFi to Comply
with Seizure Warrants - 7
*United States v. Potapenko, et al.*, CR22-185 RSL

US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
MONEY LAUNDERING AND ASSET RECOVERY SECTION
1400 NEW YORK AVE NW
WASHINGTON, DC 20005
(202) 514-1263

*The United States and BlockFi Agreed Upon a Method For Calculating The Amount BlockFi Is to Turn Over.*

The United States and BlockFi have agreed upon a framework for the transfer of funds required by the seizure warrants. The balances and conversion rates between cryptocurrency and U.S. dollars should be calculated as of the date of service of the Warrants—*i.e.*, November 16, 2022. The Subject Accounts were made up of three distinct parts: (1) cryptocurrency wallets ("Wallets"), (2) BlockFi Interest Accounts ("BIAs"), and (3) retail loan accounts, made up of collateral and loan balances, ("Loans"). BlockFi has already transferred the balance of the Wallets. What remain at issue, and are the subject of the Stipulation, are the BIAs and Loans.

BlockFi Lending LLC, one of the debtor entities, held three Loans with Defendant-controlled entities. The collateral for these accounts was held in the BIAs. Though collateral was held in cryptocurrency, loans were made in U.S. dollars.

In order to calculate the amount owed on the loans as of November 16, the outstanding loan amount was converted to cryptocurrency using the exchange rate on November 16. This amount was then subtracted from the collateral held in the BIA. The result is the balance BlockFi has agreed to transfer to U.S.-controlled wallets. The total amounts are:

Bitcoin (BTC): 766.6390063

Ether (ETH): 8,288.586937

Gemini Dollar (GUSD): 110,978.06

USD Coin (USDC): 190.2106056

Tether (USDT): 0.00174

Litecoin (LTC): 0.15309219

Motion to Compel BlockFi to Comply
with Seizure Warrants - 8
*United States v. Potapenko, et al.*, CR22-185 RSL

US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
MONEY LAUNDERING AND ASSET RECOVERY SECTION
1400 NEW YORK AVE NW
WASHINGTON, DC 20005
(202) 514-1263

1    The United States would not waive the right to seek the seizure or forfeiture of the

2 outstanding loan amounts.  Typically, even if a criminal defendant only had a partial

3 interest in property, the United States would seize an entire account, and sort out any third

4 party interests in an ancillary proceeding.  *See, e.g., United States v. Shanholtzer*, <u>492 F.</u>

5 <u>App'x. 799, 800-01</u> (9th Cir. 2012) (where defendant used forfeitable funds to acquire a

6 secured interest in an airplane, government stepped into defendant's shoes as secured

7 creditor, and could sell the plane to recovery the interest, while returning the equity to the

8 third-party owner).  Recognizing that in this case the entity holding the loans, *i.e.* BlockFi

9 Lending, LLC, is one of the debtor entities, in order to avoid protracted litigation, the

10 United States will not ask for the transfer of additional funds at this time.

11                              **IV.    CONCLUSION**

12    For the foregoing reasons, the United States respectfully asks this Court to enter the

13 attached Proposed Order, compelling BlockFi to comply with the Warrants.

14

15    DATED: May 22, 2023

16                                          Respectfully submitted,
                                            BRENT S. WIBLE, Chief
17                                          Money Laundering and Asset Recovery
                                                   Section, Criminal Division
18                                          U.S. Department of Justice

19
                              By:    <u>*/s/ Adrienne E. Rosen*</u>
20                                          ADRIENNE E. ROSEN, Trial Attorney
                                            US Department of Justice, Criminal Division
21                                          Money Laundering and Asset Recovery Section
                                            1400 New York Avenue, NW
22                                          Washington, DC 20005
                                            202.616.2690
23                                          Adrienne.Rosen@usdoj.gov

24

25

26

27

Motion to Compel BlockFi to Comply
with Seizure Warrants - 9
*United States v. Potapenko, et al.*, CR22-185 RSL

US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
MONEY LAUNDERING AND ASSET RECOVERY SECTION
1400 NEW YORK AVE NW
WASHINGTON, DC 20005
(202) 514-1263

Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 2:22-CR-00185-RSL |
| Plaintiff, | **[PROPOSED] ORDER COMPELLING BLOCKFI TO COMPLY WITH SEIZURE WARRANTS** |
| v. | |
| SERGEI POTAPENKO and IVAN TURÕGIN, | Note on Motion Calendar: June 2, 2023 |
| Defendants. | |

THIS MATTER having come before the Court upon a motion by the United States to compel BlockFi to comply with seizure warrants issued by this Court ("Motion").

The Court, having reviewed the papers and pleadings filed in this matter, hereby FINDS:

1.    On October 27, 2022, the grand jury returned an indictment charging Defendants Sergei Potapenko and Ivan Turõgin with wire fraud, in violation of 18 U.S.C.

Motion to Compel BlockFi to Comply
with Seizure Warrants - 1
*United States v. Potapenko, et al.*, CR22-185 RSL

1    § 1343; conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and conspiracy

2    to commit money laundering, in violation of 18 U.S.C. § 1956(h). Dkt. No. 1.

3          2.     The United States alleged in the indictment that, in the event of conviction,

4    any property constituting, or derived from, proceeds Defendants obtained, directly or

5    indirectly, as a result of the wire-fraud scheme would be subject to forfeiture under

6    18 U.S.C. § 981(a)(1)(C), by way of 28 U.S.C. § 2461(c), and any property involved in, or

7    traceable to property involved in, the money-laundering conspiracy would be subject to

8    forfeiture under 18 U.S.C. § 982(a)(1). Dkt. No. 1.

9          3.     On November 10, 2022, the Honorable Michelle L. Peterson, Magistrate

10   Judge in the United States District Court for the Western District of Washington signed

11   four Warrants to Seize Property Subject to Forfeiture (the "Warrants") which authorized

12   law enforcement to seize "[a]ll funds—including virtual currencies" from specified

13   accounts held at BlockFi Inc. in the names of Defendants and/or entities they controlled

14   (the "Subject Accounts").  *See* 22-MC-101-MLP.

15         4.     The Warrants were served on BlockFi on November 16, 2022.  As of that

16   date, the Subject Accounts comprised (1) cryptocurrency wallets ("Wallets"), (2) BlockFi

17   Interest Accounts ("BIAs"), and (3) retail loan accounts, made up of collateral and loan

18   balances ("Loans").

19         5.     On November 28, 2022, BlockFi filed a voluntary petition for bankruptcy

20   pursuant to Title 11, jointly administered under the case styled *In re BlockFi, Inc. et al.*,

21   Case No. 22-19361 (MBK), pending in the United States Bankruptcy Court for the District

22   of New Jersey.

23

24

25   Motion to Compel BlockFi to Comply                    US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION

26   with Seizure Warrants - 2                         MONEY LAUNDERING AND ASSET RECOVERY SECTION
     *United States v. Potapenko, et al.*, CR22-185 RSL              1400 NEW YORK AVE NW

27                                                                WASHINGTON, DC 20005
                                                                    (202) 514-1263

6.     On February 10 and 13, 2023, in partial compliance with the Warrants, BlockFi transferred the full balances of the of the Subject Accounts' Wallets to wallets controlled by the United States.

7.     On March 1, 2023, the United States filed a Forfeiture Bill of Particulars specifically identifying the contents of the Subject Accounts as property involved in the money-laundering conspiracy and therefore subject to forfeiture in the instant case pursuant to 18 U.S.C. § 982(a)(1). Dkt. No. 9.

8.     This Court has original and exclusive jurisdiction over the Subject Accounts pursuant to 18 U.S.C. § 3231 (district courts have jurisdiction over "all offenses against the laws of the United States"); 28 U.S.C. § 1355 (the district court has jurisdiction over any forfeiture "incurred under any act of Congress").

9.     The Subject Accounts are exempt from the automatic stay of the bankruptcy action because the Seizure Warrants represent the action of a governmental unit enforcing its police or regulatory power, pursuant to 11 U.S.C. § 362(b)(4).

NOW, THEREFORE, THE COURT ORDERS:

1.     The United States' Motion for an order compelling compliance with the Warrants is GRANTED.

2.     In compliance with the Warrants and this Order, BlockFi shall transfer the following property consistent to the United States within 10 days of the entry of this order:

     a.  Bitcoin (BTC): 766.6390063;

     b.  Ether (ETH): 8,288.586937;

     c.  Gemini Dollar (GUSD): 110,978.06;

     d.  USD Coin (USDC): 190.2106056;

Motion to Compel BlockFi to Comply
with Seizure Warrants - 3
*United States v. Potapenko, et al.*, CR22-185 RSL

US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
MONEY LAUNDERING AND ASSET RECOVERY SECTION
1400 NEW YORK AVE NW
WASHINGTON, DC 20005
(202) 514-1263

1        e.   Tether (USDT): 0.00174; and

2        f.   Litecoin (LTC): 0.15309219.

3        3.     This Court shall retain exclusive jurisdiction over disputes concerning the

4    seizure and forfeiture of the contents of the Subject Accounts and compliance with the

5    Warrants.

7        IT IS SO ORDERED.

9        DATED this ___ day of _____, 2023.

12   _____

13   ROBERT S. LASNIK
     UNITED STATES DISTRICT JUDGE

14   Presented by:

15   *s/ Adrienne E. Rosen*
     ADRIENNE E. ROSEN, Trial Attorney
16   US Department of Justice, Criminal Division
     Money Laundering and Asset Recovery Section
17   1400 New York Avenue, NW
     Washington, DC 20005
18   202.616.2690
     Adrienne.Rosen@usdoj.gov

Motion to Compel BlockFi to Comply
with Seizure Warrants - 4
*United States v. Potapenko, et al.*, CR22-185 RSL

US DEPARTMENT OF JUSTICE, CRIMINAL DIVISION
MONEY LAUNDERING AND ASSET RECOVERY SECTION
1400 NEW YORK AVE NW
WASHINGTON, DC 20005
(202) 514-1263

# EXHIBIT 5

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

**Order Filed on May 22, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

| | |
|---|---|
| In Re:<br>  BLOCKFI INC., et al., | Case No.:        22-19361<br><br>Hearing Date: |
| OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS<br><br>                            Plaintiff(s)<br>v.<br>  BLOCKFI, INC. et al., and<br>  UNITED STATES OF AMERICA,<br><br>                            Defendant(s) | Adv. No.:        23-01144<br><br>Judge:        Michael B. Kaplan |

**ORDER TO SHOW CAUSE AND FOR TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF**

The relief set forth on the following pages, is hereby **ORDERED**.

**DATED: May 22, 2023**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** **DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| BROWN RUDNICK LLP <br> Robert J. Stark, Esq. <br> Kenneth J. Aulet, Esq. <br> Bennett S. Silverberg, Esq. <br> Seven Times Square <br> New York, NY  10036 <br> Telephone: (212) 209-4800 <br> Fax: (212) 209-4801 <br> Email: rstark@brownrudnick.com <br>      kaulet@brownrudnick.com <br>      bsilverberg@brownrudnick.com <br> *Counsel for the Official Committee of Unsecured Creditors* <br>  -and- <br> GENOVA BURNS LLC. <br> Daniel M. Stolz, Esq. <br> Donald W. Clarke, Esq. <br> Gregory S. Kinoian, Esq. <br> 110 Allen Rd., Suite 304 <br> Basking Ridge, NJ 07920 <br> Telephone: (973) 230-2095 <br> Fax: (973) 533-1112 <br> Email: DStolz@genovaburns.com <br>     DClarke@genovaburns.com <br>     GKinoian@genovaburns.com <br> *Local Counsel for the Official Committee of Unsecured Creditors* | BROWN RUDNICK LLP <br> Stephen D. Palley, Esq. <br> 601 Thirteenth Street, NW <br> Washington, DC  20005 <br> Telephone: (202) 536-1700 <br> Fax: (202) 536-1701 <br> Email:  spalley@brownrudnick.com <br><br> BROWN RUDNICK LLP <br> One Financial Center <br> Boston, MA  02111 <br> Tristan Axelrod, Esq. <br> Sharon I. Dwoskin, Esq. <br> Telephone: (617) 856-8200 <br> Fax:  (617) 856-8201 <br> Email: taxelrod@brownrudnick.com <br>     sdwoskin@brownrudnick.com |
| In re: <br><br> BLOCKFI INC., *et al.,* <br><br>                    Debtors.[1] | Chapter 11 <br><br> Case No. 22-19361 (MBK) <br><br> Jointly Administered |

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**In Re: BLOCKFI, INC.**
Case No. 22-19361(MBK)
Adv. Pro. No. 23-01144 (MBK)
Caption: ORDER TO SHOW CAUSE AND FOR TEMPORARY AND PRELIMINARY
            INJUNCTIVE RELIEF

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS<br><br>                    Plaintiff,<br><br>v.<br><br>BLOCKFI, INC. *et al.,* and<br>UNITED STATES OF AMERICA,<br><br>                    Defendants. | Adv. Pro. No. 23-01144 |

## ORDER TO SHOW CAUSE AND FOR
## <u>TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF</u>

        The relief set forth on the following pages is hereby:

**ORDERED**

**In Re: BLOCKFI, INC.**
Case No. 22-19361(MBK)
Adv. Pro. No. 23-_____(MBK)
Caption: ORDER TO SHOW CAUSE AND FOR TEMPORARY AND PRELIMINARY
        INJUNCTIVE RELIEF

 

    **THIS MATTER** being brought before the Court by the Official Committee of
Unsecured Creditors (the "**Committee**" or the "**Plaintiff**") duly appointed in the above-
captioned Chapter 11 cases and plaintiff in the above-captioned adversary proceeding (the
"**Adversary Proceeding**"), seeking relief by way of a verified adversary complaint (the
"**Complaint**") and order to show cause pursuant to Federal Rule of Bankruptcy Procedure 7065,
based on the facts set forth in the Complaint and the application in support (the "**Application**");
and prior notice having been provided to counsel for defendants BlockFi Inc. and its affiliated
debtors and debtors-in-possession (the "**Debtors**") and the United States of America (the
"**Government**" and, together with the Debtors, the "**Defendants**"); and the Court having
determined that it has jurisdiction over this action pursuant to 28 U.S.C. § 1334; and the
provisions of this Order being limited to the relief set forth herein and shall not be binding as
findings of fact or conclusions of law as to any other matter or subsequent proceeding, including:
(ii) the Committee's request for a preliminary injunction, permanent injunction or judgment, as
requested in this Adversary Proceeding; or (iii) any future demand or complaint against the
Government or the Debtors by any other party; and it appearing that immediate irreparable
damage will result before the return date of this Order to Show Cause; and for good cause
shown;

    **IT IS** on this 22nd day of May, 2023:

**[ORDER TO SHOW CAUSE]**

    **ORDERED** that Defendants appear and show cause before the Honorable Michael B.
Kaplan, U.S.B.J. at the United States Bankruptcy Court, District of New Jersey, Trenton

**In Re: BLOCKFI, INC.**
Case No. 22-19361(MBK)
Adv. Pro. No. 23-01144(MBK)
Caption: ORDER TO SHOW CAUSE AND FOR TEMPORARY AND PRELIMINARY
          INJUNCTIVE RELIEF

Vicinage, 402 East State Street, Trenton, New Jersey 08608, on June 5, 2023 at 10:00am

why an Order should not be entered:

1.    Granting the Plaintiff a preliminary injunction pursuant to Fed. R. Bankr. P. 7065

to maintain the status quo by preventing the Debtors from entering into the Stipulation[2] and

making the Transfer to the Government; and

2.    Granting exclusive leave, standing, and authority to the Committee to commence,

prosecute and, if appropriate, settle the Causes of Action on behalf of the Debtors' estates in the

Washington District Court; and

3.    If the Transfer has already occurred, avoiding and recovering such Transfer; and

4.    For such other relief as the Court deems is just and proper; and **it is further**

**[TEMPORARY RESTRAINTS]**

**ORDERED** that:

1.    The Debtors are hereby temporarily restrained from entering into the Stipulation

and making the Transfer to the Government from this date until the Court hears Plaintiff's Order

to Show Cause and adjudicates the Plaintiff's request for preliminary restraints.

2.    Plaintiff shall serve a copy of this Order to Show Cause and Complaint on counsel

for Defendants by electronic mail and overnight mail within 1 day of the date hereof.

3.    Defendants shall file and serve any written opposition to the Application by

June 2, 2023. Defendants must also send a copy of their papers to the Plaintiff's attorneys whose

name and address appear above. A telephone call will not protect your rights; you must file and

---

[2]    Capitalized terms not defined herein shall have the meanings given to them in the Application and/or the
Complaint, as applicable.

**In Re: BLOCKFI, INC.**
Case No. 22-19361(MBK)
Adv. Pro. No. 23-01144 (MBK)
Caption: ORDER TO SHOW CAUSE AND FOR TEMPORARY AND PRELIMINARY
        INJUNCTIVE RELIEF

serve your opposition on your adversary if you want the Court to hear your opposition to the

relief sought by Plaintiff.

4.    For the reasons set forth in the Application, Plaintiff shall not be required to post a

bond.

5.    If Defendants do not file and service opposition to this Application and Order to

Show Cause, the Application will be decided on the papers on the return date and any relief may

be granted by default, provided that Plaintiff files a proof of service and proposed form or order

after the return date.

# EXHIBIT 6

Order Filed on May 26, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS | Adv. Pro. No. 23-01144 |
| Plaintiff, | |
| v. | Case No. 22-19361 (MBK) |
| BLOCKFI, INC. *et al.,* and UNITED STATES OF AMERICA, | |
| Defendants. | |

## ORDER TO SHOW CAUSE AND FOR
## TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

The relief set forth on the following pages is hereby:

**ORDERED**

DATED: May 26, 2023

Honorable Michael B. Kaplan
United States Bankruptcy Judge

2

**THIS MATTER** being brought before the Court by the Official Committee of Unsecured Creditors (the "**Committee**" or the "**Plaintiff**") duly appointed in the above-captioned Chapter 11 cases and plaintiff in the above-captioned adversary proceeding (the "**Adversary Proceeding**"), seeking relief by way of a verified adversary complaint (the "**Complaint**") and order to show cause pursuant to Federal Rule of Bankruptcy Procedure 7065, based on the facts set forth in the Complaint and the application in support (the "**Application**"), and the supplemental application in support (the "**Supplemental Application**"); and prior notice having been provided to counsel for defendants BlockFi Inc. and its affiliated debtors and debtors-in-possession (the "**Debtors**") and the United States of America (the "**Government**" and, together with the Debtors, the "**Defendants**"); and the Court having determined that it has jurisdiction over this action pursuant to 28 U.S.C. § 1334; and the provisions of this Order being limited to the relief set forth herein and shall not be binding as findings of fact or conclusions of law as to any other matter or subsequent proceeding, including: (ii) the Committee's request for a preliminary injunction, permanent injunction or judgment, as requested in this Adversary Proceeding; or (iii) any future demand or complaint against the Government or the Debtors by any other party; and it appearing that immediate irreparable damage will result before the return date of this Order to Show Cause; and for good cause shown;

IT IS on this  26th  day of May, 2023:

[ORDER TO SHOW CAUSE]

**ORDERED** that Defendants appear and show cause before the Honorable Michael B. Kaplan, U.S.B.J. at the United States Bankruptcy Court, District of New Jersey, Trenton

3

Vicinage, 402 E. State Street, Trenton, New Jersey 08608, on **June 15, 2023 at 2:00pm**, why an

Order should not be entered:

1.      Granting the Plaintiff a preliminary injunction pursuant to <u>Fed. R. Bankr. P. 7065</u>

to maintain the status quo by preventing the Debtors from entering into the Stipulation[2] and

making the Transfer to the Government; and

2.      Granting exclusive leave, standing, and authority to the Committee to commence,

prosecute and, if appropriate, settle the Causes of Action on behalf of the Debtors' estates in the

Washington District Court; and

3.      If the Transfer has already occurred, avoiding and recovering such Transfer; and

4.      For such other relief as the Court deems is just and proper; and **it is further**

**[TEMPORARY RESTRAINTS]**

      **ORDERED** that:

1.      The Debtors are hereby temporarily restrained from entering into the Stipulation

and making the Transfer to the Government from this date until the Court hears Plaintiff's Order

to Show Cause and adjudicates the Plaintiff's request for preliminary restraints.

2.      The Government is hereby temporarily restrained from commencing or continuing

any act to obtain the property from the Debtors specified in the Motion to Compel, including but

not limited to prosecuting its Motion to Compel, pending further Order of this Court, <u>and</u> must

either (i) take all necessary steps to adjourn all deadlines, noting dates, return dates, hearing

dates, and all similar procedural deadlines of the Motion to Compel pending further Order of this

---

[2]      Capitalized terms not defined herein shall have the meanings given to them in the Supplemental
Application, the Application and/or the Complaint, as applicable.

Court; or (ii) withdraw the Motion to Compel without prejudice.

3.      Plaintiff shall serve a copy of this Order to Show Cause and Complaint on counsel for Defendants by electronic mail and *overnight* mail within 1 days of the date hereof.

4.      Defendants shall file and serve any written opposition to the Supplemental Application by **June 8, 2023**.  Defendants must also send a copy of their papers to the Plaintiff's attorneys whose name and address appear above.  A telephone call will not protect your rights; you must file and serve your opposition on your adversary if you want the Court to hear your opposition to the relief sought by Plaintiff.

5.      For the reasons set forth in the Application, Plaintiff shall not be required to post a bond.

6.      If Defendants do not file and service opposition to this Supplemental Application and Order to Show Cause, the Supplemental Application will be decided on the papers on the return date and any relief may be granted by default, provided that Plaintiff files a proof of service and proposed form or order after the return date.

Form order − ntcorder

# UNITED STATES BANKRUPTCY COURT

District of New Jersey
402 East State Street
Trenton, NJ 08608

In Re:  BlockFi Inc.
Debtor

Case No.: 22−19361−MBK
Chapter 11

Official Committee Of Unsecured Creditors
Plaintiff

v.

BlockFi Inc.
Defendant

Adv. Proc. No. 23−01144−MBK                     Judge: Michael B. Kaplan

## NOTICE OF JUDGMENT OR ORDER
### Pursuant to Fed. R. Bankr. P. 9022

Please be advised that on May 26, 2023, the court entered the following judgment or order on the court's docket in the above−captioned case:

Document Number: 9
ORDER TO SHOW CAUSE AND FOR TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF. Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 5/26/2023. Show Cause hearing to be held on 6/15/2023 at 02:00 PM at MBK − Courtroom 8, Trenton. (wiq)

Parties may review the order by accessing it through PACER or the court's electronic case filing system (CM/ECF). Public terminals for viewing are also available at the courthouse in each vicinage.

Dated: May 26, 2023
JAN: wiq

Jeanne Naughton
Clerk

# EXHIBIT 7

1    THE HONORABLE ROBERT S. LASNIK

2

3

4

5

6

7    UNITED STATES DISTRICT COURT FOR THE
     WESTERN DISTRICT OF WASHINGTON
8                     AT SEATTLE

9    UNITED STATES OF AMERICA,              No. 2:22-CR-00185-RSL

10                       Plaintiff,         BLOCKFI'S RESPONSE TO UNITED
                                            STATES' MOTION TO COMPEL
11        v.                                BLOCKFI TO COMPLY WITH
                                            SEIZURE WARRANTS
12   SERGEI POTAPENKO and
     IVAN TURÕGIN,
13
14                       Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

BLOCKFI'S RESPONSE TO UNITED
STATES' MOTION TO COMPEL
NO. 2:22-CR-00185-RSL

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1        Respondents BlockFi Inc., BlockFi Trading LLC, BlockFi Lending, LLC, BlockFi Wallet

2  LLC, BlockFi Ventures LLC, BlockFi International Ltd., BlockFi Investment Products LLC,

3  BlockFi Services Inc., and BlockFi Lending II LLC (collectively, "BlockFi") file this response to

4  the United States' Motion to Compel BlockFi To Comply With Seizure Warrants [Doc. No. 17].

5  BlockFi respectfully responds as follows:

6        BlockFi operated a financial services platform that allowed retail and institutional account

7  holders to lend, borrow, trade, and store certain digital assets, including cryptocurrencies. Like all

8  participants in that industry, BlockFi suffered from the contagion that arose from the massive fraud

9  committed by Samuel Bankman-Fried and his affiliated FTX entities. FTX's sudden collapse

10  forced BlockFi to freeze all accounts and pause all withdrawals from its platform on November

11  10, 2022. And on November 28, 2022, BlockFi filed its chapter 11 cases in the United States

12  Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

13        Amidst these issues, on November 16, 2022, the United States served four seizure warrants

14  on BlockFi. The United States recognized that the ownership and valuation of the accounts subject

15  to the seizure warrants presented novel questions of law. BlockFi turned over the assets it could—

16  assets held in "wallet accounts," which the Bankruptcy Court recently ruled were not property of

17  the BlockFi bankruptcy estate. [Bankruptcy Court Doc. No. 923.] But cryptocurrencies held in

18  what are known as BlockFi Interest Accounts ("BIAs") and retail loan accounts ("Collateral

19  Accounts"), which BlockFi had the right to and did in fact rehypothecate, presented much more

20  complicated questions, including whether BIAs and Collateral Accounts are property of BlockFi's

21  bankruptcy estate.

22        BlockFi cooperated with the government in working through the many details and issues

23  related to the BIA and Collateral Accounts. The proposed Stipulation is the product of negotiations

24  over several months between BlockFi and the government. The parties exchanged drafts, shared

25  information, and made compromises. The parties finalized a proposed Stipulation that provided

26

BLOCKFI'S RESPONSE TO UNITED STATES'
MOTION TO COMPEL
NO. 2:22-CR-00185-RSL – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

for the surrender of certain assets to the United States upon approval of this Court. The parties anticipated signing the Stipulation on May 23, 2023.

Consistent with its duties as debtor in possession, BlockFi had informed other parties in interest, such as its Official Committee of Unsecured Creditors (the "Committee"), of the Stipulation's status.

The day before the proposed Stipulation was to be signed, the Committee applied for—and the Bankruptcy Court entered—an *Order to Show Cause and for Temporary and Preliminary Injunctive Relief* (the "TRO"). A true and correct copy of the TRO is attached hereto as Exhibit A. The TRO prohibits BlockFi from entering into the Stipulation or transferring any assets to the United States, including but not limited to those certain assets that are the subject of this proceeding.

On May 26, 2023, at approximately noon EDT, the Committee filed its Supplemental Application in Support of the Committee's Request for Temporary, Preliminary, and Permanent Injunctive Relief seeking, among other things, to enjoin the government from prosecuting its Motion to Compel and either to (i) adjourn all deadlines related to the Motion to Compel, or (ii) have the Motion to Compel withdrawn (the "Supplemental TRO Application"). At approximately 1:40 p.m. on May 26, 2023, the Bankruptcy Court entered an order granting certain relief sought in the Supplemental TRO Application, including enjoining the government from prosecuting the Motion to Compel. A true and correct copy of the May 26 Order is attached hereto as Exhibit B. A hearing on the Committee's request for injunctive relief is set for June 15, 2023, at 2:00 p.m. EDT before the Bankruptcy Court.

BlockFi files this response to provide the Court context about the Bankruptcy Court proceedings, the TRO, and the current status of the Stipulation for consideration in connection with these proceedings.

//

//

BLOCKFI'S RESPONSE TO UNITED STATES'
MOTION TO COMPEL
NO. 2:22-CR-00185-RSL – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1     RESPECTFULLY SUBMITTED this 26th day of May, 2023.

2

3                        s/*Todd M. Hinnen*, WSBA No. 27176

THinnen@perkinscoie.com

4                       Tyler S. Roberts, WSBA No. 52688

TRoberts@perkinscoie.com

5                       **Perkins Coie LLP**

1201 Third Avenue, Suite 4900

6                       Seattle, WA 98101-3099

Telephone: 206.359.8000

7                       Facsimile:  206.359.9000

8                       and

9                       **HAYNES AND BOONE, LLP**

Richard Kanowitz (*pro hac vice* pending)

10                     30 Rockefeller Plaza

26th Floor

11                     New York, NY 10112

Telephone: (212) 659-7300

12                     Facsimile: (212) 918-8989

Email: Richard.Kanowitz@haynesboone.com

13

14                     Richard D. Anigian (*pro hac vice* pending)

Charles M. Jones II (*pro hac vice* pending)

15                     2323 Victory Avenue

Suite 700

16                     Dallas, TX 75219

Telephone: (214) 651-5000

17                     Facsimile: (214) 651-5940

Email:  Rick.Anigian@haynesboone.com

18                                  Charlie.Jones@haynesboone.com

19                     *Attorneys for Respondents BlockFi Inc.,*

*BlockFi Trading LLC, BlockFi Lending, LLC,*

20                     *BlockFi Wallet LLC, BlockFi Ventures LLC,*

*BlockFi International Ltd., BlockFi Investment*

21                     *Products LLC, BlockFi Services Inc., and*

*BlockFi Lending II LLC*

22

23

24

25

26