NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors. | Bankruptcy Action No. 22-19361 (MBK)<br><br>Adversary Proceeding No. 23-1144 (MBK) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Plaintiff,<br><br>v.<br><br>BLOCKFI INC. *et al.*, and UNITED STATES OF AMERICA,<br><br>Defendants. | Civil Action No. 23-3015 (RK)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Defendant the United States of America's ("Defendant" or the "Government") Motion to Withdraw the Reference of the Adversary Proceeding, ("Mot.," ECF No. 1).[1] The Official Committee of Unsecured Creditors ("Plaintiff") filed a brief in opposition, ("Opp.," ECF No. 9), and the Government filed a reply brief, ("Reply,"

---

[1] The "Adversary Proceeding" refers to Adversary Proceeding No. 23-1144 (2023) in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

ECF No. 11).[2] The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court denies the Government's motion.

I.      **BACKGROUND**

This motion to withdraw concerns ongoing dual proceedings: a bankruptcy proceeding in the District of New Jersey and a criminal prosecution in the Western District of Washington. The bankruptcy involves BlockFi, a "cryptocurrency financial services company." ("Adversary Proceeding Compl.," ECF No. 9, Ex. B ¶ 14.) BlockFi offers three products relevant to this Opinion: a "Wallet;" a "BlockFi Interest Account ('BIA');" and "Cryptocurrency lending services (a 'Collateral Account')." (*Id.*) The Wallet allows customers to store cryptocurrency while "retain[ing] full legal title" to all items deposited. (*Id.*) The BIA accounts "promise[] high interest rates" to clients who "transfer title to deposited cryptocurrency for redeployment," and the Collateral Accounts "allow loan clients to deposit digital asset collateral . . . and borrow funds with a value of up to 50% of their deposited collateral." (*Id.*)

The terms of service applicable to Wallet accounts differ from those governing BIAs and Collateral Accounts. The Wallet's terms state that "title to the cryptocurrency held in your BlockFi Wallet shall at all times remain with you and shall not transfer to BlockFi . . . BlockFi shall not sell, transfer, loan, hypothecate or otherwise alienate cryptocurrency held in your BlockFi Wallet unless specifically instructed by you." (*Id.* ¶ 15.) On the other hand, the terms of service for the BIA and Collateral Account permit BlockFi "without further notice to [the client], to pledge,

---

[2] Defendants BlockFi Inc. and its related debtors (collectively, "BlockFi" or "Debtors") — BlockFi Trading LLC; BlockFi Lending LLC; BlockFi Wallet LLC; BlockFi Ventures LLC; BlockFi International Ltd.; BlockFi Investment Products LLC; BlockFi Services, Inc. and BlockFi Lending II LLC — filed a response to the Government's motion in which BlockFi took "no position" as to "which court should issues [any] orders" relating to the Adversary Proceeding. (ECF No. 8 at 2.)

2

repledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, invest or use any amount of such cryptocurrency" in the respective accounts. (*Id.* ¶¶ 16–17.)[3]

BlockFi deployed the funds in BIA and Collateral accounts; according to the Adversary Proceeding Complaint, "BlockFi lent at least $680 million to FTX-associated hedge fund Alameda Research, and held another $350 million on the FTX exchange." (*Id.* ¶ 18.) FTX subsequently collapsed, causing BlockFi, on November 10, 2022, to halt all account withdrawals (the "Platform Pause"), as "BlockFi no longer had access to sufficient assets to satisfy all account withdrawals." (*Id.* ¶ 19.)

On November 28, 2022, BlockFi filed for Chapter 11 bankruptcy. (*Id.* ¶ 24.) The Bankruptcy Court shortly thereafter entered an "Order (I) Restating And Enforcing The Worldwide Automatic Stay, Anti-Discrimination Provisions, And Ipso Facto Protections Of The Bankruptcy Code And (II) Granting Related Relief." (*Id.* ¶ 25.) BlockFi, according to the Adversary Proceeding Complaint, no longer has sufficient assets to satisfy the money owed to either BIA or Collateral Account holders. (*Id.* ¶ 26.)

---

[3] The BIA terms of service state:

> Except where prohibited or limited by applicable law, BlockFi has the right, without further notice to you, to pledge, repledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, invest or use any amount of such cryptocurrency, separately or together with other property, with all attendant rights of ownership . . . . You acknowledge that, with respect to the assets used by BlockFi pursuant to this paragraph: (i) you will not be able to exercise rights of ownership . . . .

(Adversary Proceeding Compl. ¶ 16 (citations omitted).) Similarly, the Collateral Account terms of service:

> allowed BlockFi, without notice to the retail loan client to "pledge, repledge, hypothecate, rehypothecate, sell, lend or otherwise transfer, invest, or use any retail client loan collateral, separately or together with other property, with all attendant rights of ownership, and for any period of time and without retaining in BlockFi's possession and/or control a like amount of assets."

(*Id.* ¶ 17 (citations omitted).)

On October 27, 2022, shortly before BlockFi filed for bankruptcy, a federal grand jury sitting in the Western District of Washington indicted Sergei Potapenko and Ivan Turõgin (the "Criminal Defendants") for conspiracy to commit wire fraud, wire fraud and conspiracy to commit money laundering. (Mot. at 3.) The Complaint alleges that the Criminal Defendants operated a Ponzi scheme that "induc[ed] hundreds of thousands of victims to pay more than $575 million for the purchase of contracts in a cryptocurrency mining service called HashFlare and to invest in a virtual currency bank called Polybius Bank." (*Id.*; *see also* Adversary Proceeding Compl. ¶ 20.) These funds were allegedly laundered through various "financial institutions and virtual asset service providers," one of which was BlockFi. (Mot. at 3–4.)

As part of the criminal prosecution, the Honorable Michelle Peterson, the Magistrate Judge overseeing the case, "issued, and the United States served on BlockFi, four seizure warrants (the 'Seizure Warrants') directing law enforcement to seize the contents" of the accounts operated by the Criminal Defendants or their alleged fraudulent businesses. (*Id.* at 4; *see also* ECF No. 1, Ex. 2.) The Government served these warrants on BlockFi on November 16, 2022, which according to Plaintiff, was "days after BlockFi effectively admitted it was insolvent through its Platform Pause." (Adversary Proceeding Compl. ¶ 21.) The Seizure Warrants called for the Government to seize "[a]ll funds – including virtual currencies" from the relevant BlockFi accounts. (*Id.* ¶ 21.) The accounts include one BIA, one Wallet, and two Collateral Accounts. (*Id.*)

BlockFi complied with the Seizure Warrant for the assets in the Wallet account and transferred those funds to the Government on February 10 and 13, 2023. (Mot. at 4 n.5.) The Government contends that the remaining accounts are worth over $35 million.[4] (*Id.* at 4.) Plaintiff alleges that the other BlockFi accounts associated with the Criminal Defendants — the BIA and

---

[4] BlockFi alleges the value is "close to $40 million." (Adversary Proceeding Compl. ¶ 2.)

Collateral accounts — no longer contain the digital assets, as "[t]hey were either trapped on FTX's platform . . . or sold in accordance with [BlockFi's] ownership of such assets pursuant to the Terms of Service." (Adversary Proceeding Compl. ¶ 23.) The accounts are "an obligation of the Debtors to the account holders, rather than a measure of funds." (*Id.*) Plaintiff claims that the Government and BlockFi have been negotiating a stipulation (the "Stipulation") whereby BlockFi would remit to the Government the full balance in the remaining three accounts. (*Id.* ¶ 2.)

Thereafter, on May 22, 2023, Plaintiff filed an Adversary Proceeding seeking the Bankruptcy Court to enjoin the parties from entering into the Stipulation. (*Id.* ¶¶ 35–43.) Plaintiff argues that the Stipulation "conflicts with the equal treatment policy of the Bankruptcy Code" by mistreating claims of certain creditors, as well as "irreparably harm[ing]" BlockFi's creditors by greatly reducing the value of the estate. (*Id.* ¶¶ 29–30.) Along with its Complaint, Plaintiff concurrently filed a Motion for a Temporary Restraining Order ("TRO") from the Bankruptcy Court, (*see* Adversary Proceeding ECF No. 2), and subsequently sought a second TRO on May 26, 2023, (*see* Adversary Proceeding ECF No. 8).[5] On the same day, the United States filed a Motion to Compel in the criminal proceeding in the Western District of Washington, seeking to require BlockFi to comply with the Seizure Warrants. (Mot. at 4–5.)

The Bankruptcy Court granted Plaintiff's two *ex parte* TROs. The first, ordered on May 22, 2023, enjoined BlockFi from entering into the Stipulation. (*See* Adversary Proceeding ECF No. 4.) The second, ordered on May 26, 2023, continued to restrain BlockFi from entering into the Stipulation, as well as "temporarily restrain[ing] the Government from commencing or continuing to act to obtain the property from [BlockFi] specified in the Motion to Compel." (*See* Adversary

---

[5] Plaintiff filed the first TRO requesting the Bankruptcy Court to enjoin the Government and BlockFi from entering the Stipulation, and the second TRO to enjoin the Government's Motion to Compel.

Proceeding ECF No. 9.) On June 1, 2023, the Government filed its motion before the undersigned seeking to withdraw the reference of the Adversary Proceeding. (ECF No. 1.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1334(a), United States district courts "have original and exclusive jurisdiction of all cases under title 11." Further, "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Based on this jurisdictional grant, the "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The District of New Jersey "has referred all proceedings arising under Title 11 to the bankruptcy court pursuant to a standing order of reference dated July 23, 1984," and as amended September 18, 2012. *In re Int'l Benefits Grp., Inc.*, No. 06-2363, 2006 WL 2417297, at *1 (D.N.J. Aug. 21, 2006); *Karagjozi v. Bruck*, No. 17-6305, 2017 WL 4155104, at *2 (D.N.J. Sept. 20, 2017).

Along with permitting reference to the bankruptcy court, section 157 also permits a district court to withdraw the reference. *See In re Hollister Constr. Servs., LLC*, No. 21-1358, 2023 WL 5277868, at *2 (D.N.J. Aug. 16, 2023). A withdrawal is either permissive or mandatory. *Int'l Benefits*, 2006 WL 2417297, at *1. Mandatory withdrawal requires a district court, "on timely motion of a party" to withdraw "if the if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). This occurs when the bankruptcy court faces "a substantial and material question of both Title 11 and non-Code federal law and the non-Code federal law has more than a *de minimis* effect on interstate commerce." *Drs. Assocs.,*

*Inc. v. Desai*, No. 10-575, 2010 WL 3326726, at *4 (D.N.J. Aug. 23, 2010) (cleaned up); *In re Quaker City Gear Works, Inc.*, 128 B.R. 711, 714 (E.D. Pa. 1991) ("[W]ithdrawal of reference is denied where only routine application of established legal standards is called for or when it is not clear that application and interpretation of statutes other than the Bankruptcy Code will be necessary to resolve the case."). Courts in this district construe mandatory withdrawal "narrowly to ensure bankruptcy cases are litigated in the bankruptcy courts and to prevent § 157(d) from becoming an 'escape hatch' from litigating cases under the Bankruptcy Code." *In re G-I Holdings, Inc.*, 295 B.R. 211, 221 (D.N.J. 2003) (quoting *In re Mahlmann,* 149 B.R. 866, 870 (N.D. Ill. 1993)). The "moving party 'bears the burden of demonstrating that a substantial and material consideration of non-bankruptcy law is necessary to resolve the case.'" *Perkins v. Verma*, No. 11-2557, 2011 WL 5142937, at *2 (D.N.J. Oct. 27, 2011) (quoting *United States v. Wood*, 161 B.R. 17, 20 (D.N.J. 1993)).

Under the permissive withdrawal standard of section 157, a district court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). "Although there is no statutory definition of what constitutes 'cause shown' under 28 U.S.C. § 157(d) for permissive withdrawal of reference, 'the statute requires in clear terms that cause be shown before the reference can be withdrawn.'" *In re Dwek*, No. 09-4833, 2010 WL 2545174, at *2 (D.N.J. June 18, 2010) (quoting *Nw. Inst. of Psychiatry, Inc. v. Travelers Indem. Co.*, 272 B.R. 104, 107 (E.D. Pa. 2001)). The "threshold factor" in determining whether there is cause to withdraw depends on whether "the proceeding is 'core' or 'non-core' to the pending bankruptcy case." *In re E. W. Trade Partners, Inc.*, No. 06-1812, 2007 WL 1213393, at *3 (D.N.J. Apr. 23, 2007); *see also Int'l Benefits*, 2006 WL 2417297, at *2 ("The most important factor for the Court to consider in deciding whether to

withdraw a reference to the bankruptcy court for cause is whether or not the claim is a core proceeding or a non-core proceeding."). Although not a dispositive question, a "'core' designation weighs heavily against withdrawing the reference due to the bankruptcy court's expertise in 'core' bankruptcy matters." *Karagjozi*, 2017 WL 4155104, at *3. Subsequent to this determination, the district court applies the four-factor test articulated by the Third Circuit in *In re Pruitt* — "whether withdrawal would: (1) promote uniformity in bankruptcy administration; (2) reduce forum shopping and confusion; (3) foster the economical use of the debtors' and creditors' resources; and (4) expedite the bankruptcy process." *Dwek*, 2010 WL 2545174, at *4 (citing *In re Pruitt*, 910 F.2d 1160, 1165 (3d Cir. 1990)).

### III. DISCUSSION

The Government raises several arguments in support of its motion to withdraw. First, it argues the Court must withdraw the reference because "[t]he Adversary Proceeding requires the Court to resolve substantial and material questions of federal criminal law." (Mot. at 5.) The Government contends that the Bankruptcy Court would be required to consider such issues "as whether (1) the district court in Washington has original and exclusive jurisdiction over the approximately $35 million in cryptocurrency at issue; and (2) federal non-bankruptcy law prohibits the Creditors' Committee from challenging compliance with the criminal warrants." (*Id.* at 7.) Second, the Government argues that permissive withdrawal is warranted here "because the Adversary Proceeding raises predominantly non-core claims and withdrawal would promote judicial efficiency." (*Id.* at 13.) In support, it claims the Adversary Proceeding "attempts to enjoin the United States' criminal asset seizure and forfeiture proceeding," while withdrawal would conserve judicial resources by requiring the district court to decide "legal issues concerning the

jurisdiction of the court and standing of the parties [that] would be reviewed de novo" if first decided by the Bankruptcy Court. (*Id.* at 14.)

Plaintiff opposes the Government's motion. It argues that the "case turns on issues of property and contract law, and the Bankruptcy Code." (Opp. at 1.) It contends it "is not challenging compliance with the Seizure Warrants," but rather merely "is seeking to ensure that the Government takes only what the Seizure Warrants permit it to take." (*Id.* at 12.) Further, it argues that the Bankruptcy Court has jurisdiction "to determine what is and what is not property of the estates," and as such, "consideration of non-bankruptcy law is not necessary to determine jurisdiction over the property sought by the government." (*Id.*) In addition, Plaintiff argues that the Adversary Proceeding is a "core" bankruptcy proceeding such that permissive withdrawal is not merited. (*Id.* at 17.)

### A.   MANDATORY WITHDRAWAL

In support of its motion, the Government claims that the Adversary Proceeding requires interpretation of a question of criminal law, namely "whether the Washington district court maintains exclusive jurisdiction over assets subject to its warrants." (Mot. at 8.) The Government further contends that the "court must resolve whether [the *ex parte* TROs] are barred by criminal law prohibiting efforts . . . establish[ing] the validity of interests in property subject to forfeiture." (*Id.* at 10.) In response, Plaintiff asserts that the Adversary Proceeding only asks the Bankruptcy Court "to ensure that the Government takes only what the Seizure Warrants permit it to take." (Opp. at 12.) Plaintiff insists this requires only "an interpretation of the plain texts of the warrants . . . BlockFi's terms of services . . . [and] the Bankruptcy Code. (*Id.* at 1–2.)

Mandatory withdrawal requires there to be "a substantial and material question of both Title 11 and non-Code federal law." *Desai*, 2010 WL 3326726, at *4 (quotation marks and citations

omitted). This "narrow reading . . . comports with Congressional intent for bankruptcy judges to 'act much like a magistrate' with the ability 'to enter a final judgment . . . in all proceedings integral to the core bankruptcy functioning of restructuring the obligations of the debtor and his creditors.'" *In re G-I Holdings, Inc.*, 295 B.R. at 221 (quoting 130 Con. Rec. H1848 (Daily Ed. Mar. 21, 1984) (Statement of Rep. Kindness)).

     Here, the Adversary Proceeding requires the Bankruptcy Court to interpret the Seizure Warrants and to determine whether the funds at issue in the accounts are included in the Bankruptcy estate. Notwithstanding the Government's contention to the contrary, the Government has not persuasively shown that this requires more than "routine application of established legal standards" or "interpretation of non-bankruptcy code statutes." *In re Philadelphia Training Ctr. Corp.*, 155 B.R. 109, 111 (E.D. Pa. 1993). As the party seeking withdrawal, the Government "bears the bears the burden of demonstrating that a substantial and material consideration of nonbankruptcy law is necessary to resolve the case." *In re Cont'l Airlines*, 138 B.R. 442, 445 (D. Del. 1992). The Government has not carried its burden to demonstrate that the Adversary Proceeding requires interpretation, as opposed to application, of federal non-bankruptcy laws. *In re Keene Corp.*, 182 B.R. 379, 383 (S.D.N.Y. 1995) ("Mandatory withdrawal is not warranted at this time because it is unclear whether issues requiring significant interpretation will be required for resolution"); *Quaker City*, 128 B.R. at 714 ("[W]ithdrawal of reference is denied . . . when it is not clear that application and interpretation of statutes other than the Bankruptcy Code will be necessary to resolve the case."); *cf. Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 39 (D. Del. 1989) (mandating withdrawal where resolution of the case would "require substantial and material consideration of the regulations applicable to OSHA"); *In re Chateaugay*

*Corp.*, 86 B.R. 33, 37 (S.D.N.Y. 1987) (granting mandatory withdrawal where the resolution of the matter would have required the Bankruptcy Court to rule on ERISA statutes).

Further, it is the role of the Bankruptcy Court to "determine[] whether [a] particular interest may properly be included in the property of the estate." *Cont'l Airlines,* 138 B.R. at 445. The Adversary Proceeding concerns the contours of the Bankruptcy estate and whether certain funds are, or are not, a part of it. The Bankruptcy Court is well equipped to make such a determination.[6]

Therefore, the Court denies finds mandatory withdrawal not warranted. The Government's motion is denied without prejudice.

### B. PERMISSIVE WITHDRAWAL

As described above, the key consideration concerning permissive withdrawal is whether the Adversary Proceeding is "core" or "non-core" to the Bankruptcy Proceeding. *E. W. Trade*, 2007 WL 1213393, at *3. Here, the parties vehemently contest — and have not asked the Bankruptcy Court to decide — whether the Adversary Proceeding claims are core or non-core. (*Compare* Mot. at 13; Opp. at 17; *see generally* Adversary Proceeding Docket.) However, "it is appropriate to allow the Bankruptcy Court to make the determination of whether a claim is non-core in the first instance." *Hollister*, 2023 WL 5277868, at *4 (cleaned up and citations and quotation marks omitted). The "motion to withdraw the reference to the Bankruptcy Court is premature since the Bankruptcy Court has not yet determined whether the Adversary Proceeding is a core or non-core proceeding." *In re Kara Homes, Inc.*, No. 08-2406, 2009 WL 2223035, at *2 (D.N.J. July 22, 2009); *Hollister*, 2023 WL 5277868, at *4 (denying motion to withdraw as

---

[6] To be clear, the Bankruptcy Court's decisions do not stymie the Government's criminal enforcement efforts. As the Government notes, it has already indicted the Criminal Defendants in the Western District of Washington Action and is prosecuting its case. (*See* Mot. at 3.) The issues at bar in the Bankruptcy Proceeding do not affect the ability of the Government to attempt to prove its case. Nor is there any risk the money from the BlockFi accounts will disappear.

11

premature where Bankruptcy Court had not yet determined if Adversary Proceeding was core or non-core and noting caution was "especially warranted" where parties disagreed on "the 'core' issue"); *E. W. Trade*, 2007 WL 1213393, at *3–4 (holding that the motion to withdraw was "not ripe for consideration" where Bankruptcy Court had not yet made a core or non-core finding).

Because the Bankruptcy Court has yet to have the opportunity to decide whether the Adversary Proceeding is core or non-core to the Bankruptcy Proceeding, the motion to withdraw is premature until the Bankruptcy Court makes this threshold determination. *Certain Underwriters At Lloyd's of London v. Otlowski*, No. 08-3998, 2009 WL 234957, at *2 (D.N.J. Jan. 29, 2009) (denying motion to withdraw without prejudice because motion was "unripe . . . until such time a bankruptcy court has had an opportunity to render an initial decision on the core/non-core issue").

Therefore, at this juncture, the Government's motion is denied without prejudice.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** the Government's Motion to Withdraw without prejudice. An appropriate Order will accompany this Opinion.

                                                                                       _____
                                                                                       **ROBERT KIRSCH**
                                                                                       **UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: September 20, 2023